## THE TEXAS PACIFIC RAILWAY COMPANY V. T. R. JOHNSON.

### No. 2771.

1. **Receiver of Railway Company.**—Although such receiver is charged with a duty to the public which must be discharged through the use of the property in his hands, a railway company, in the absence of some statute so providing, will not be liable for the acts of the receiver by reason alone of his relation to it.

2. **Same—Collusive Appointment—Absence of Jurisdiction.**—If the railway company and its creditors by collusion should procure a receivership, or if such receiver in fact operated the road under orders of a court without jurisdiction, it seems that the railway company would be bound by the acts of such receiver.

3. **Current Receipts—Damages.**—That a claim for damages caused by injuries inflicted through the negligence of a receiver while he is operating a railway is entitled to payment out of current receipts is well settled.

4. **Same.**—If current earnings be invested by the receiver in betterments upon the road, which without sale is returned to the company with its other property at the close of the receivership, then the company must be held to have received the property charged with the satisfaction of any claim which the receiver ought to have paid out of the earnings.

5. **Discharge of Receiver, Effect of.**—Both parties having pleaded that the receiver had been discharged and the property all returned to the company under the order of the court in which the proceedings were had, this ended the control of the court over the property. The custody of the court went with the discharge of the receiver and the return of the property to its owner.

6. **Same—Claims Against Receivership.** — The property when released from the custody of the court stands subject to any claim or charge that may rest upon it.

7. **Order of Court Without Jurisdiction.**—An order of the United States Circuit Court in Eastern District of Louisiana in receivership proceedings affecting the Texas Pacific Railway, to which plaintiff was not a party, prescribing that all persons who had claims with which the property was charged should present their claims by intervention in that court, was without authority of law and not binding upon the plaintiff as affecting his right to enforce by suit his claim.

8. **Power of United States Court.**—The time within which a claim for damages may be prosecuted against a railway company is fixed by law, and can not be altered by order of court.

9. **Suits Against Receivers.**—Under Act of Congress of March 3, 1887, persons having claims against receivers may sue upon and establish them in any court having jurisdiction. This right could not be nullified by order of court.

10. **Claims Against Railway while Operated by Receiver.**—Such claims are payable out of current earnings, and when these are used in betterments upon the property, the road so increased in value is liable to the extent of the earnings so used by the receiver when the property so improved is returned without sale to the owner.

11. **Same.**—After discharging the receiver and restoring the property to owners, the United States court could not retain such jurisdiction over the matter as to prevent the prosecution to judgment and execution in any court having jurisdiction.

12. **Receiver Represents Railway in his Hands.** — To some extent the receiver is held to represent the property in his hands; he is more than the mere arm of the law wielded by the court. See illustration.

13. **Same—Suit Against Railway.**—A suit in the State courts for damages for personal injuries caused by the negligent operating of the Texas Pacific Railway Company while in hands of a receiver can be maintained against the railway company after its property was restored to it, the current earnings having been used by the receiver upon the road in improving it.

| | |
|---|---|
| 76 | 421 |
| 76 | 442 |
| 76 | 446 |
| 76 | 421 |
| 79 | 17 |
| 79 | 81 |
| 76 | 421 |
| 80 | 100 |
| 76 | 421 |
| 82 | 43 |
| 82 | 544 |
| 83 | 23 |
| 83 | 289 |
| 76 | 421 |
| 85 | 283 |
| 76 | 421 |
| 88 | 280 |
| 76 | 421 |
| 89 | 144 |

14.  **Defective Switch—Duty of Employer.**—If the machinery relied upon by the receiver to keep the rails in the proper position was so defective that it did not accomplish that purpose, then he had failed in duty to the employe, which fixed liability, he could not be relieved from that by the fact that some other employe, by use of some unusual means, might have placed and held the rails in proper position.

15.  **Defective Brakes.**—Where an employe was injured in a railway accident, and in addition to a defective switch which derailed the car on which plaintiff was employed it was also shown that the brakes were out of order, probably preventing the stopping of the cars before being overturned, *held,* that the court properly refused to charge that plaintiff could not recover if the injury was caused by the defective brakes.

16.  **Verdict Not Excessive.**—See injuries where verdict for $15,000 for personal injuries was sustained.

APPEAL from Marion.    Tried below before Hon. J. L. Sheppard.

This suit was filed September 14, 1888, by T. R. Johnson, against John C. Brown, receiver of Texas Pacific Railway Company, for damages for personal injuries received by him while running an engine on the Texas Pacific Railway on January 31, 1888, at Lansing Switch.    By amendment the Texas Pacific Railway was made defendant, on the ground that Brown as receiver had delivered all the property to the Texas Pacific Railway Company and had been discharged on November 1, 1888, and that the receiver had improved the road.

The Texas Pacific Railway Company answered that the road was in the exclusive management and control of John C. Brown as receiver, appointed by the United States Circuit Court for the Eastern District of Louisiana, at the time plaintiff was injured.    That when the receiver was discharged the property was turned over to this defendant by virtue of a decree of the court that appointed the receiver, and by said decree the property was made liable only (1) for all traffic liabilities due connecting lines; (2) for all contracts made by the receiver; (3) for all judgments which may be rendered in favor of persons interested in the cause where the receiver was appointed before February 1, 1889; and free from all other demands or claims; and that the cause should be dismissed.    Defendant further answered that plaintiff assumed the risk of the injury he received.

January 18, 1889, verdict and judgment in favor of Brown and against the Texas Pacific Railway Company for $15,000.

The Texas Pacific Railway Company appealed.

*F. H. Prendergast,* for appellant. — 1.  The decree of the Federal court by which the property was delivered to the Texas Pacific Railway Company, charged with certain liabilities, can not be ignored by any other court in a collateral proceeding by enforcing other liabilities against the property by execution.    Brown v. Brown, 71 Texas, 355; Davis v. Duncan, 17 Am. and Eng. Ry. Cases, 285; Railway v. Davis, 26 Am. and Eng. Ry. Cases, 427; Trust Co. v. Railway, 7 Fed. Rep., 537; 17 Am. Law Rev., 847.

2.   The court that appointed the receiver having created an indebtedness for the purpose of improving the road, this debt became a charge against the property prior to plaintiff's claim, and the court making said orders had the exclusive power to fix the priority and provide for the payment of each.

3.   The court erred in giving special charge asked by plaintiff, to the effect that if the net earnings were used to improve the road and its rolling stock, and the company received said road in its improved condition, then the property in the hands of the company would be liable to the extent of the value of said improvement.   This was error, because there was no pleading raising such an issue, and because there was no evidence that there was any net earnings applied to the improvement of the road.

4.   The court erred in refusing special charge asked by defendant, to the effect that plaintiff could not recover if at the time plaintiff was injured the railway was in the exclusive management of a receiver appointed by the Circuit Court of the United States.

*C. A. Culberson,* for appellee.— 1.   The District Court at Jefferson had jurisdiction to enter the judgment appealed from; because:

(1)   Service was regularly had upon appellant, and it voluntarily appeared, submitted to the jurisdiction, and answered in bar of the action. The want of jurisdiction is alleged in the assignment of errors for the first time.

(2)   If the question were properly presented for determination, the court had jurisdiction, because appellee was not a party to the decree at New Orleans, under which it is claimed that all other courts were deprived of jurisdiction, and he can not be held bound by it.   Freem. on Judg., secs. 154, 155, 190; Shelby v. Bacon, 10 How., 56; Williams v. Gibbes, 17 How., 239; Green v. Creighton, 23 How., 90; Andrews v. Smith, 5 Fed. Rep., 833; In Re Howard, 9 Wall., 175; Railway v. Davis, 62 Miss., 271.

(3)   The question is not one of jurisdiction, but when properly presented is one of contempt.   Beach on Receivers, sec. 171; Kinney v. Crocker, 18 Wis., 80; Railway v. Smith, 19 Kans., 225; Allen v. Railway, 42 Ia., 683.

2.   The receiver Brown, though appointed by the law, was the representative of appellant.   For its own benefit the appellant decided to have the property placed in the hands of this receiver, and it was done either at the request of appellant or collusively.   His servants causing the injury to Griffin were therefore the servants of appellant, for whose negligence it is responsible.   Ryan v. Hays, 62 Texas, 48; Bartlett v. Keim, 35 Am. and Eng. Ry. Cases, 15.

The practice of interested and collusive appointments is condemned. Beach on Receivers, sec. 327; Laws 1887, p. 122, sec. 17.

3.   Under the order of May 31, 1888, discharging the receiver and de-

livering the property to appellant, by which the "railway and its property may be operated by the corporation" thereafter, appellant was made liable absolutely (without reference to an intervention at New Orleans) "for causes of action originating against him and against the property pending the receivership," which included the claim of the appellee. The subsequent report of Brown, filed in October, 1888, shows that from June 1, 1888, to October 31, 1888, he operated the road, not as receiver but as president of the company; that between said dates he had "kept his accounts as with the company;" that he prayed to be "allowed to account to said company," and it was granted; that he had "carried over on the present book of the company the cash balance and all other balances of property and assets as found in his hands by his report to the 1st of June aforesaid;" and, in short, that though the court retained some indefinite authority over him until a formal discharge was entered, the corporation received the property on June 1 and thereafter operated and managed it. This order was never revoked; and the appellant accepted the property on June 1, by the terms of which Brown was "fully protected by the corporation" against these claims. The order of October 26, 1888, now relied upon, was apparently an afterthought, intended by the company possibly to coerce compromises. The order of May 31 was never revoked. Wood's Prac. Ev., sec. 62; Murphy v. Dow, 25 Ill., 251; Beach on Receivers, sec. 735; High on Receivers, sec. 398b.

4. The order of October 26, 1888, in so far as it purports to outlaw all claims against the receiver not presented by intervention at New Orleans, is void; because:

(1) The order is violative of the Act of Congress of March 3, 1887, section 3, allowing suits without leave of the court, which may be prosecuted in any court of competent jurisdiction. After discharging the receiver the court could not control the fund. Railway v. Davis, 62 Miss., 271; Very v. Watkins, 23 How., 469.

(2) It violates the rights of appellee existing by virtue of State laws with reference to property of appellant in Texas and upon which he has a lien. Gen. Laws 1887, p. 120, sec. 6; Blair v. Walker, 26 Fed. Rep., 73; Brine v. Ins. Co., 96 U. S., 627; Orvis v. Powell, 98 U. S., 176; Swift v. Smith, 102 U. S., 450. A similar statutory lien was held enforceable in any court of competent jurisdiction by a United States court. Loan Co. v. Railway, 7 Fed. Rep., 542.

(3) It is claimed by appellant that the authority to pass this order is granted in the act of Congress referred to. But this contention is wholly without merit. That act is restraining, not enabling. It grants no additional power to the court appointing the receiver. Bradstreet v. Ins. Co., 3 Sumn., 601; Freem. on Judg., secs. 118, 154, 155, 190; Windsor v. McVeigh, 93 U. S., 274, and authorities; Anthony v. Casey, 5 Am. St. Rep., 277; Shelby v. Bacon, 10 How., 56; Williams v. Gibbes, 17

How., 239; Green v. Creighton, 23 How., 90; Andrews v. Smith, 5 Fed. Rep., 833; In Re Howard, 9 Wall., 175; Railway v. Davis, 26 Am. and Eng. Ry. Cases, 428; Kinney v. Crocker, 18 Wis., 74.

(4)  There is no evidence that the notice which is required to be given claimants by publication and posting, provided for in the last paragraph of the order of October 26, 1888, was ever given, nor pleading to authorize it.    Being in derogation of the rights of appellee and contrary to established law, the order must be strictly complied with before a shadow of binding force can attach to it.    No evidence was offered on this point. Cool. Const. Lim., pp. 498, 499; Wade on Notice, secs. 1029, 1030.

5.    Without reference to either of the foregoing orders entered at New Orleans, under the general principles of equity the fund in the hands of the receiver is liable for the payment of this claim, the property being redelivered to appellant and the rights of no innocent third parties interposing.    This fund may be followed in the hands of appellant and subjected to the claim of appellee.    This is true, because:

(1)    The claim against the receiver is in the nature of a claim against the property in his custody, upon which in equity a lien exists.    Ryan v. Hays, 62 Texas, 47; Combs v. Smith, 78 Mo., 32; Woodruff v. Railway, 93 N. Y., 609; High on Receivers, sec. 255; Beach on Receivers, secs. 715, 718; Trust Co. v. Railway, 117 U. S., 434; Turner v. Railway, 8 Biss., 527; Meara's Admr. v. Holbrook, 20 Ohio St., 137; Commonwealth v. Runk, 26 Pa. St., 235; Kain v. Smith, 80 N. Y., 458; Stratton v. Railway, 76 Me., 269.

(2)    When this is true, under long established principles of equity the original property which came to his hands, irrespective of what may have been added by way of renewals and betterments, may be followed in any court of competent jurisdiction and impressed with the lien.    Loan Co. v. Railway, 7 Fed. Rep., 542; Howard v. Railway, 7 Wall., 392; In Re Howard, 9 Wall., 175; Adam's Eq., pp. 308, 309; Story's Eq. Jur., secs. 1251, 1252; 1 Perry on Trusts, secs. 241, 242; 2 Pome. Eq. Jur., secs. 1046–1048; 2 Mora. Corp., secs. 780, 789, 790, 791, 794.

6.    Irrespective of either of said orders, on the foregoing principle the appellant is liable for this claim against the receiver, because over $2,300,000, the net earnings of the receivership, out of which the claim was payable, was diverted from its equitable course and placed in renewals and betterments, which were delivered to appellant upon the discharge of the receiver    Ryan v. Hays, 62 Texas, 42; Beach on Receivers, sec. 378; High on Recivers, sec. 398b; Ex Parte Brown, 15 S. C., 87; Railway v. Davis, 62 Miss., 721; Trust Co. v. Soutter, 107 U. S., 591; Burnham v. Bowen, 111 U. S., 776; Klein v. Jewett, 26 N. J. Eq., 474.

STAYTON, CHIEF JUSTICE.—From December 16, 1885, until October 31, 1888, the Texas Pacific Railway was in the hands of and operated by

John C. Brown as receiver, appointed by the Circuit Court of the United States, sitting in the Eastern District of Louisiana.

Appellee brought this action against the receiver on September 14, 1888, to recover damages for an injury alleged to have been received by him through the negligence of the receiver on January 31, 1888. Being advised that the receiver had been discharged, on December 17, 1888, appellee caused the railway company to be made a defendant.

There was a trial, which resulted in a judgment in favor of the receiver, but the appellee recovered a judgment against appellant for $15,000.

The Texas Pacific Railway Company answered that the road was in the exclusive management and control of John C. Brown as receiver, appointed by the United States Circuit Court for the Eastern District of Louisiana, at the time plaintiff was injured. That when the receiver was discharged the property was turned over to defendant by virtue of a decree of the court that appointed the receiver, and by said decree the property was made liable only (1) for all traffic liabilities due connecting lines; (2) for all contracts made by the receiver; (3) for all judgments which may be rendered in favor of persons interested in the cause where the receiver was appointed before February 1, 1889, and free from all other demands or claims; and that the cause should be dismissed. Defendant further answered that plaintiff assumed the risk of the injury he received.

The record shows that on or before May 16, 1888, the receiver made known to the court that appointed him that the objects and purposes contemplated in the several proceedings under which he was appointed had been practically accomplished; that the parties in interest so agreed; and after settlement with him, and the payment of costs and other liabilities or provision therefor made, that he should be discharged and the causes dismissed.

The agreements of the several parties to this effect are stated to have been made exhibits to receiver's petition for discharge, which stated that his accounts to the 1st of May were in condition for settlement, which he asked.

He further stated that he had an agreement with the reorganization committee as to his compensation, and prayed that he be permitted to "turn over to the proper officer of the Texas Pacific Railway Company" the property in his hands, but made known to the court that there were unsettled claims growing out of his conduct of the business, against which he asked protection.

On May 16, 1888, the petition was acted upon by the court, which, after directing a settlement to June 1, stated that "in the meantime the receiver will continue to hold the property under the orders of the court until the 1st of June, 1888, at which time, if this order is not vacated, the railway and its property may be operated by the corporation, under such orders as may be made by the court from time to time, and under the

supervision and control of the receiver, to the end that the property shall not pass beyond the control of the orders of the court, nor of the receiver, until the accounting takes place with the receiver, and until he is fully protected by the corporation for causes of action originating against him and against the property pending the receivership."

On or before October 26, 1888, the receiver, reciting the former orders, and stating that his accounts had been examined and approved, stated that "no formal delivery of the road and property in his hands had been made to said railway company, and petitioner now asks that he be allowed formally to deliver all property and funds in his hands as such receiver to said railway company, and that he be allowed to account to said company according to his account filed up to the 1st of June, and for all receipts and expenditures by him received and made since the 1st of June. He has carried over to the present books of the company the cash balance and all other balances of property and assets as found in his hands by his report to the 1st of June aforesaid, and he is now the president of said railway company, and after his discharge will be in possession of all said company's road, property, and funds as such for said company; wherefore he asks that he be discharged from his said receivership, and that his bond as receiver be vacated and annulled on payment of all costs legally taxable; but he asks the court to make such orders as will charge the property so turned over in the hands of said railway company and its assigns with all liability for which he as receiver is or might be held personally liable."

He further stated that his compensation had been agreed upon and settled to the 31st of October, "at which time he asks that his discharge take effect."

This petition was acted upon by the court on October 26, 1888, when the following order was entered: "On consideration of the foregoing petition, it is now ordered, adjudged, and decreed that the prayer of the same be granted; and accordingly that John C. Brown, receiver of the property of the Texas Pacific Railway in the above entitled causes, be and he is hereby directed to make delivery unto said Texas Pacific Railway Company of all property, funds, and assets in his hands as such receiver; and that he be directed to account to said company according to his account filed and approved up to June 1, 1888, and for all receipts and expenditures by him received and made since the said 1st June, 1888. Such delivery will be made as of October 31, 1888. It is further ordered that said receiver be finally discharged on said 31st October, 1888, from his receivership on payment of all costs legally taxed, and that thereupon his bond be vacated and canceled.

"It is further ordered that said property, nevertheless, shall be delivered to and received by the Texas Pacific Railway Company, subject to and charged with all traffic liabilities due to connecting lines, and all

contracts for which said receiver is or might be held, made, or in any way liable, and subject also to any and all judgments which have heretofore been rendered in favor of intervenors in this case, and which have not been paid, as well as to such judgments as may be hereafter rendered by the court in favor of intervenors while it retains the cases for these determinations on interventions now pending or which may be filed prior to February, 1889; and upon the condition that such liabilities and obligations of the receiver, when so recognized and adjudged, may be enforced against property in the hands of said company or its assigns to the same extent they could have been enforced if said property had not been surrendered into the possession of said company and was still in the hands of the court; and with the further condition that the court may, if needful for the protection of the receiver's obligation and liabilities recognized by this court, resume possession of said property.

"The bills in this cause will be retained for the purpose of investigating such liabilities and obligations, and for such other purposes as may seem needful. It is ordered that all claims against the receiver as such up to said 31st of October, 1888, be presented and prosecuted by intervention prior to February 1, 1889, and if not so presented by that date that the same be barred, and shall not be a charge on the property of said company. It is further ordered that said receiver advertise in a daily newspaper in New Orleans and in Dallas the fact of his discharge, and a notice to said claimants to make claim within the time aforesaid, to-wit, before the first of February, 1889, and that he put a printed notice of similar purport in the station houses of said railway."

It appears from the testimony of the receiver that in the autumn of 1885 the company became satisfied that it could not longer continue to pay interest on its bonded debt without first expending a large sum of money in renewal of tracks, raising roadway, widening cuts and embankments, putting in new cross ties, purchasing rolling stock and motive power, and the renewal of bridges, and other like improvements.

To ascertain what should be done the directors appointed a committee, who, with experts, were directed to examine into the condition of the road and report what, as well as the sum necessary, to place the road in good condition.

The result of that report was a determination to cease to pay interest, and to place the road in the hands of a receiver, which was done; it being thought, however, that the road would probably have to be sold to satisfy mortgages, which was obviated at the end of a receivership lasting nearly three years, by some scheme devised by a board known as the "committee on reorganization."

While the road was in the hands of receiver all the earnings and income, after paying recognized operating expenses, were expended in improvements such as have been already referred to, as was also a large

additional sum furnished by the stockholders. Money seems also to have been borrowed for improvement purposes, a large part of which has been paid.

The receiver and railway company both pleaded the full discharge of the former from the receivership, and alleged that all the property of the company was delivered to it on October 31, 1888, in pursuance of the order before referred to, which was alleged to have been fully complied with; and the latter pleaded that it held the property charged with all liabilities imposed by the order before referred to, but denied that it was liable for the claim of plaintiff unless he had intervened in the suits pending in the Circuit Court of the United States, sitting for the Eastern District of Louisiana in the city of New Orleans, within the time prescribed by the order, and had there established his claim.

Appellee was in the employment of the receiver at the time he was injured, and engaged in carrying on the business.

It is contended that the court erred in holding that the railway company would be liable in a case in which the receiver before discharged would have been liable, if while in his hands receipts were used in making permanent improvements on the road to an amount more than sufficient to meet the judgment, although the injury occurred while the road was operated by and under the control of the receiver.

This, with the third, fifth, and ninth assignments, will present the questions presented by appellant on the first branch of the case. These assignments are:

"The court erred in giving special charge No. 2 asked by plaintiff, to the effect that if the net earnings were used to improve the road and its rolling stock, and the company received said road in its improved condition, then the property in the hands of the company would be liable to the extent of the value of said improvement. This was error, because there was no pleading raising such an issue, and because there was no evidence that there was any net earnings applied to the improvement of the road."

"The court erred in refusing special charge No. 3 asked by defendant, to the effect that plaintiff could not recover if at the time plaintiff was injured the railway was in the exclusive management of a receiver appointed by the Circuit Court of the United States."

"The court erred in not granting a new trial, because the evidence showed no liability of the defendant that could be enforced in this court, and that the decree of the United States Circuit Court discharging the receiver protects this defendant against the enforcement of this claim in this court."

There is much reason for holding that a receiver does not sustain to a railway company whose property is placed in his hands by a court having jurisdiction over the property, the full relation of servant to master or

of agent to principal; for he is selected by the court and must act in accordance with its orders.

Although charged with a duty to the public, which must be discharged through the use of its property, a railway company, under the present state of the authorities, in the absence of some statute so providing, will not be liable for acts of the receiver by reason alone of his relation to it. When its property becomes liable for his acts, this rests on the existence of some fact other than the mere existence of the receivership and his breach of duty.

If, however, it should be made to appear, as is contended was the appointment of the receiver whose acts are in question, that an appointment was collusive, and in effect made at request of and for the benefit of the company, for the purpose of placing for a time its property beyond the reach of some classes of its creditors, then it might with some propriety be held that the receiver was but the servant or agent of the company, for whose acts it would be as fully responsible as though he was appointed by its stockholders or directory.

There are facts in the record tending strongly to show that the company was the mover in the matter of receivership, and that its management in the court was through amicable understanding between the company and those adverse to it on the record, with a view to settlement, not through foreclosure, but by dismissal of the suits after such time as its property had been held beyond the reach of some creditors and had been largely augmented in value by improvements made from earnings.

We are not authorized, however, to believe had this been the case that the court would have continued the receivership, nor are we authorized to revise the action of that court in reference to any matter to which its jurisdiction attached.

It may further be true, if a railway company permits its property to remain in the hands of a receiver appointed by a court having no jurisdiction over its property, that it ought to be held liable for his acts while in control of the property.

The record shows that the receiver was appointed by a Circuit Court of the United States for the Eastern District of Louisiana, while the property of the Texas Pacific Railway Company is in Texas, and that the business of the receivership was conducted in that court. We are not informed by the record in what manner jurisdiction was acquired by that court, and it may be that it had none; but that court having assumed to exercise jurisdiction over the property, we can not undertake to decide from the record before us whether it lawfully did so, and in the disposition of this case will assume that the receivership was valid.

Appellee seeks to recover for an injury received by him while in the employment of the receiver, who testified that all the "earnings and income of the road, after paying operating expenses, * * * were appro-

priated to the improvement of the road;" and on offer to prove the sum so expended, it was agreed or admitted that "the betterments placed on the road out of the earnings of the railway * * * were of value sufficient to more than cover the amount claimed by plaintiff in this suit." Under this admission it must be held that earnings of the road while in hands of receiver more than sufficient to entitle appellee to have the judgment paid out of appellant's property were used in making improvements. The purpose of this admission was to render other proof on that point unnecessary.

The pleadings and this proof and admission properly present the question whether appellant is liable if the accident for which damages are claimed occurred under such circumstances as would have entitled appellee to payment out of earnings of the road had he recovered judgment pending the receivership.

The question is in no manner complicated by rights or claims of other persons, but rests against appellant, who has received and retains, invested in betterments, a sum which ought to have been paid to appellee if he was injured under such circumstances as to give right of action against the receiver.

That a claim for damages caused by injuries inflicted through the negligence of a receiver while he is operating a railway is entitled to payment out of current receipts is well settled. Ryan v. Hays, 62 Texas, 42; Barton v. Barbour, 104 U. S., 130; Kain v. Smith, 80 N. Y., 470, and cases cited; Brown v. Railway, 9 Am. and Eng. Ry. Cases, 723; Hale v. Frost, 99 U. S., 389.

If such earnings be invested in betterments, which without sale are returned to the company with its other property at the close of receivership, then the company must be held to have received the property charged with the satisfaction of any claim which the receiver ought to have paid out of the earnings.

The principle involved in this is illustrated by many cases. Ryan v. Hays, 62 Texas, 42; Fosdick v. Schull, 99 U. S., 253; Barton v. Barbour, 104 U. S., 130; Hale v. Frost, 99 U. S., 389; Miltenberger v. Railway, 106 U. S., 287; Addison v. Lewis, 9 Am. and Eng. Ry. Cases, 702; Railway v. Davis, 26 Am. and Eng. Ry. Cases, 425; Burnham v. Benen, 17 Am. and Eng. Ry. Cases, 308.

This general rule seems not to be controverted by appellant's counsel, but it is contended that the decree under which the receivership was closed and the property returned to the company relieved it from any liability for any claim not established by intervention in the suit pending in the Circuit Court of the United States, sitting at New Orleans.

Both parties pleaded that the receiver was discharged and the property all returned to the company under the order of October 26, 1888, and that this was the effect of the order there can be no question.

This ended the control of the court over the property, and the asserted reservation of the right again to assume control amounts to nothing in the disposition of this case.

The court's custody went with the discharge of its receiver and return of the property to its owner.

Its process can not run here, and it has no means whereby it could again acquire custody of the property, unless it be true that the jurisdiction of that court is extra territorial. Such we do not understand its jurisdiction to be.

What a Circuit Court of the United States sitting within the territory where the property is situated might do through an original proceeding is not the question presented.

The property having been released from the custody of the court which once, either rightfully or wrongfully, assumed to have possession of it, stands subject to any claim or charge that may rest upon it; and this may be enforced by any court having jurisdiction through appropriate process, unless the order hereafter to be considered takes away that right.

Appellee was not a party to the suit pending in the Circuit Court of the United States sitting in the Eastern District of Louisiana, and its decrees are not binding upon him, whatever may be their effect upon those who were parties.

It is contended, however, that that court had power to require all persons who had claims with which the property once in the custody of the court was charged to present their claims by intervention for adjudication in that court.

Whence that power we know not. Courts may make erroneous rulings which will bind parties to a litigation in which they were made, but they have no power to make laws which will bind strangers to the litigation.

Had the receivership not been closed such an order, in so far as it might be sought to bind appellee through it, would be inoperative and in conflict with the Act of Congress passed March 3, 1887, which permits persons having claims against receivers to sue upon and establish them in any court having jurisdiction, without leave previously given by the court appointing the reciver. The order relied upon, if given effect, would annul the act of Congress.

It is contended further that not only was it necessary for appellee to establish his claim through intervention, but that such intervention should have been made within the time prescribed by the order, or the claim be forever barred and no longer remain a charge on the property.

It is generally understood that in our form of government none other than that to which the power to make laws is given have such power.

Within what time a claim shall be established, or action brought to establish it, must be determined by the law making power, except in those

cases in which from long lapse of time courts of equity have felt authorized to refuse to enforce them.

The court in the order referred to undertook to establish arbitrarily a fixed period, which might arise within as short a time as three months after a cause of action arose, within which it would be barred. The court had no rightful power to make such an order.

Looking to the record, it seems to us that no better scheme could have been devised than seems to have been pursued in the cause in which the receiver was appointed and receivership conducted, to enable a railway corporation and its creditors secured by mortgage to operate it for a series of years and build up a fine property for their mutual benefit at the expense of those who were largely entitled to the earnings.

The receivership was established and conducted in a State other than that in which the property was situated. How jurisdiction was acquired we are not informed.

The proceedings might as well have been in Mexico, Oregon, California, or Florida, as in Louisiana, so far as the record shows.

The property, a long line of railway running across the northern part of this State, was thus operated for nearly three years. A great part of the earnings were appropriated to better the property.

A passenger, shipper, furnisher of material, day laborer, or employe, having just claim for compensation or damages, unless this was awarded by the receiver, might sue if able to bear the expenses of litigation in a place distant from where his evidence of right might be obtained, where, according to the usual practice of the court, his claim, when it suited the convenience of all parties, would be submitted to a master in chancery, and his right thus determined, when, under the act of Congress, it was his right to sue in any other court having jurisdiction of his cause and to have an inexpensive trial in the mode appropriate under the law for the trial of his cause. This, too, after the property had passed from the custody of the court, was required to be done by all who then held unadjusted claims within an arbitrarily fixed period, when the receiver was no longer under the power of the court.

The orders seem to have been well adapted to the protection of some interests—but those were the interests of the company, lien creditors, and the receiver—at the inconvenience, if not at the expense, of that class of creditors whose several claims were comparatively small, but were charges to the extent of all betterments made with earnings.

This last class of creditors, under the Act of April 2, 1887, as well as the Act of March 19, 1889, had lien to extent of earnings used in improving the company's property, which could no more be destroyed by the orders relied on than could this action, then pending, thus be abated or rendered fruitless. So much of the order relied on as declared that the property in hands of the company should be held subject to all claims

which might have been enforced against it while in the custody of the court, its jurisdiction over the property for the purposes of this case being conceded, was obviously correct, and the company having so received it must so hold it.

That order, however, is not the true foundation on which the charge or lien rests. It rests on the statute; but in the absence of this would rest on the existence of facts which under general principles applicable create such a charge or lien, and no order of any court can change the effect of such facts or affect one not a party to the proceeding in which the order was made.

So much of the order as required intervention and provided a time within which this should be made was inoperative upon any right of appellee. If the court had power to resume custody of the company's property, a sufficient answer to the claim of appellant that resort must be had to that court by appellee to enforce his claim, is that the court has not exercised such a power, and in effect has declared that it would not to enforce any claim not reduced to judgment by intervention in that court; and the property stands subject to any proper process for the collection of judgment.

That a receiver controlling the property of a railway company is, in a limited sense, the representative of the corporation can not be denied, for on account of his conduct a liability may be fixed upon its property, which earnings while in the hands of a receiver are as much as is the corpus of the property. A judgment against him in actions of this character binds such property of the company, and it is not held to be necessary, pending receivership, to join the company as a defendant.

A person through whose acts such a liability may be imposed on the property of another, thus fixed by judgment against him alone and enforced through process to which the owner is not a party, is the representative of the person or corporation to the extent of the fund which may be affected by his act and subjected through judgment against him alone to satisfaction of claim thus arising.

Current legislation all tends to show that the consensus of legislative bodies repudiates the technical holding that a receiver is only the arm of the court, and recognizes the real relation arising from the facts. The act of Congress before referred to recognizes the representative character of the receiver.

The Act of March 19, 1889, General Laws, page 57, recognizes it, and declares that the discharge of a receiver shall not work an abatement of a suit pending against him, nor affect the right of any one having claim to sue him after discharge; it gives the right to prosecute such an action against the receiver alone, or to join with him the person or corporation whose property was once in his hands as receiver.

It further provides that "all parties and corporations whose property

has been placed in the hands of a receiver by order of court, and which was not sold by the receiver, and which property has been redelivered back to the original parties or corporation without sale of such property, shall be liable and held to pay all of the unpaid liabilities of the receiver in causes of action arising out of and during the receivership; and if there are any suits pending against the receiver at the date of discharge on causes of action arising during the receivership, the plaintiff shall have the right to make the party or corporation to whom the receiver delivered the property which was in his hands as receiver a party defendant along with the receiver; and if any judgment is rendered against the receiver for causes of action arising out of and during the receivership, then the court shall also at the same time (if the party or corporation receiving back the property have been made party defendants) render judgment in favor of the plaintiff against both defendants for the amount so found for plaintiff and all costs, and plaintiff shall have the right to foreclose his lien on the property delivered back by said receiver to said party or corporation."

Such proceedings against one not a representative of the fund or of the owner of a fund to be subjected, but once the mere arm or officer of a court, now cut off by discharge, could not be entertained.

This act was not in force when the judgment was rendered in this cause, but it tends to show that the Legislature recognized the fact that receivers really have a representative character necessary to the prosecution and enforcement if not to the existence of rights which the courts at all times have not fully recognized.

In view of the fact that the business and property of large corporations charged with duties to the public which can be discharged only by the business being conducted are at this day frequently held for long periods in receiverships, it may be found in the future necessary and proper to hold that in such cases receivers are more fully the representatives of such corporations than they have heretofore been held to be.

Objections to the judgment, based on the former existence of the receivership and orders made in discharging that, not being tenable, the only inquiries that remain are whether the facts entitled appellee to the judgment, and whether errors on the trial were committed as claimed.

Appellee was in the employment of the receiver as an engineer, and was injured by derailment of the locomotive on which he was; and the evidence showed very clearly that this was caused by a defective switch.

The evidence further tended to show that the train might have been stopped before the locomotive turned over and thus injured appellee, even after it was derailed, had the air brakes been in proper condition.

It is urged that "the court erred in refusing special charge No. 2 asked by defendant, to the effect that if the wreck was caused by a switch being out of place, and the switch was left out of place by a conductor or brakeman on another train, and such other brakeman or conductor could have

properly adjusted the switch, then their negligence would be the negligence of a fellow servant, and plaintiff can not recover;" and that "the court erred in overruling a motion for a new trial, because the evidence is not sufficient to sustain the verdict, because all the negligence that was shown was the negligence of a fellow servant of plaintiff, and there was no proof of negligence to make the defendant liable."

The evidence shows that the switch was defective, in that the spring was not strong enough to throw the point of the switch to the main rail and there hold it when the lever was in proper position to indicate to the engineer that the rails were in proper position for the car to pass. In approaching the switch the engineer saw that the lever was in position, which indicated that the rails were in proper position, but before reaching the switch he saw that this was not true, when he used all the means in his possession to stop the train, but was unable to do so in time to prevent the injury.

The errors above assigned are based on the proposition that other employes of the receiver might have placed the rails in proper position by the use of a maul, axe, or some substance which would have kept the rails in proper place, and that for this reason the injury resulted from the negligence of a fellow servant, and not from a defective switch.

The propositions can not be maintained. If the machinery relied upon by the receiver to keep the rails in proper position was so defective that it did not accomplish that purpose, then he had failed in duty to the employe, which fixed liability, and could not be relieved from that by the fact that some other employe, by the use of some unusual means, might have placed and held the rails in proper position.

The charge refused was not applicable to the facts proved.

It is urged that "the court erred in refusing special charge No. 4 asked by defendant, to the effect that plaintiff could not recover on account of any defect in the brakes on the car that was derailed."

The evidence tending to show that, notwithstanding the derailment, the locomotive and train could have been stopped before the locomotive turned over and thus injured appellee had the air brakes been in order, and also tending to show that the brakes would not work because out of order, the court did not err in refusing to give the charge requested.

It is urged that the verdict is excessive; but, although large, this must be determined by the facts, and due weight given to the finding of the jury.

At the time appellee was injured he was thirty-four years old, in good health and endowed with vigorous constitution and firm physical development. He was earning from $165 to $195 per month.

As the effect of injury received he has been incapacitated to perform any useful or profitable labor, is bereft of the sense of hearing, is physi-

cally a wreck, and can look to a future of suffering such as with most persons would make life a burden.

Though large, we can not say that the verdict is excessive; and finding no error in the judgment, it will be affirmed.

*Affirmed.*

Delivered March 7, 1890.