IN THE

# SUPREME COURT OF TENNESSEE

FOR THE

## MIDDLE DIVISION.

---

### NASHVILLE, DECEMBER TERM, 1897.

---

Lock *v.* Turnpike Co.

(*Nashville.* December 11, 1897.)

1. TURNPIKE COMPANIES. *Not liable for injuries caused by receiver's negligence.*

A turnpike company, a part of whose road, including its only toll gate, has been placed in the exclusive possession and control of a receiver, appointed by a court on application of an adverse claimant, is not liable for injuries occurring on that part of the road during the receivership, by reason of the unsafe condition of the roadbed. (*Post, pp. 167–171.*)

Cases cited and approved: 62 Tex., 38; 53 Ind., 57; 58 N. Y., 61; 74 Mo., 602; 5 Am. St. Rep., 313; 12 Am. & Eng. R. R. Cas., 432.

2. SAME.  *Effect of receivership of part of road.*

Where part of a turnpike road, including its only toll gate, is placed in exclusive possession, control, and management of a receiver, appointed on application of an adverse claimant, and the remainder is left in possession of the turnpike company, the company is relieved of all obligation to make repairs, and of all liability for failure to make them on that part of the road held and operated exclusively by the receiver, even though the decree appointing the receiver does not in terms authorize him to make repairs.  (*Post, p. 171.*)

3. SAME.  *Liability for receiver's negligence out of funds received from him.*

Although a turnpike company might, in a properly framed action, be held liable for an injury resulting from negligence of a receiver of its property, from whom it had subsequently received funds on settlement of the receivership, still, no recovery can be had, in such case, under a declaration that avers negligence of the company, and fails to aver negligence of the receiver, and subsequent receipt of funds from him by the company.  (*Post, pp. 171–176.*)

Cases cited: 76 Tex., 421; 62 Tex., 42; 80 N. Y., 470; 75 Va., 701; 62 Miss., 271; 83 Tex., 19, 537; 18 S. W. R., 481; 99 U. S., 253, 389; 104 U. S., 130; 106 U. S., 287; 151 U. S., 92.

FROM  WILLIAMSON.

Appeal in error from Circuit Court of Williamson County.  W. L. GRIGSBY, J.

BERRY & CROCKETT for Lock.

J. H. HENDERSON for Turnpike Co.

McALISTER, J.  The plaintiff in error commenced this suit, in the Circuit Court of Williamson County,

against the defendant company, to recover damages for personal injuries. There was a verdict and judgment in favor of the company. The plaintiff appealed, and has assigned errors.

The facts necessary to be noticed are that in August, 1886, the plaintiff, then about twelve years of age, was riding along the turnpike of defendant company, and in attempting to cross what is known in the record as the Benton culvert, one of its timbers gave way beneath his mule, throwing the plaintiff violently to the ground and causing permanent injuries to his foot and ankle. The present action to recover damages was commenced on December 30, 1895, shortly after the plaintiff attained his majority. The principal defense interposed by the company is that at the time the injuries were sustained by the plaintiff the turnpike was in charge of a receiver appointed by the Chancery Court; that defendant company was in no default, and that no negligence is charged against the receiver.

It is unnecessary to set out or review the pleadings in which these defenses are presented. Suffice it to say, that on the trial before the Court and jury the defendant company offered in evidence the record of certain proceedings in the Chancery Court at Franklin. It appears from this record that in 1883 the Nashville & Duck River Ridge Turnpike Co. filed a bill against the defendant, the Franklin & Hillsboro Turnpike Co., claiming the possession, control, and ownership of that portion of defendant's

road from a point four miles west from Southall's, near Hillsboro, to Cunningham's bridge, it being the west half of said turnpike, including its only toll-gate. It appears that the Benton culvert, the *locus in quo* of the accident to plaintiff, is within the section of the turnpike which was in controversy in the litigation in the Chancery Court.

The Chancellor on June 26, 1885, upon the application of complainant, appointed a receiver to take charge of that portion of defendant's turnpike which was in dispute. The receiver was directed to take possession at once of the tollgate erected and operated by defendants on said turnpike and collect the tolls. It was further decreed he should have authority to employ a gatekeeper at reasonable compensation, and he was directed to pay over to the Clerk and Master the tolls collected, at the end of each month. It was during the incumbency of this receiver that the accident happened to the plaintiff. The original receiver afterwards resigned, and other receivers were successively appointed, who collected and paid over to the Clerk and Master tolls amounting to $1,200. The litigation was ultimately decided by this Court in favor of this defendant, and the tolls collected were directed to be paid over to it, which was accordingly done after paying costs of repairs and other expenses. It is clearly shown in proof that the defective culvert, which occasioned the injury to plaintiff, was on that part of the road which was under the exclusive management of the receiver.

The first count in the declaration charged defendant company alone with the duty of keeping the turnpike in repair. The second count charged that defendant company was operating and controlling the road jointly with the receiver, and was liable for its failure to repair. The third count charged that defendant company, since the termination of said receivership, has received the net income from tolls collected by the receiver; that the injuries to plaintiff were caused by the negligence of defendant company in permitting the road to get out of repair previous to the appointment of said receiver and said joint operation and control of defendant's road as aforesaid. There was no evidence to support this count. The second and fourth counts each charged that defendant company was liable for the injury to plaintiff, for the reason that the net income realized from the collection of tolls by the receiver was turned over to it after the termination of the receivership.

The defendant company in its fourth plea sets out the appointment of the receiver by the Chancery Court, averring that it thus took from the company its only tollgate and only source of income. It also avers that after the receiver was appointed, until the final decree in the case, the company was not operating or controlling the road jointly with the receiver; that it had no power or authority to collect toll, and no funds with which to make repairs, and that if any defect existed in the road defendant company was not responsible therefor.

The second assignment made by plaintiff is that the Court erred in the following instruction to the jury, to-wit: The Court, in construing the decree of the Chancery Court, under which a receiver was appointed and which has been read as evidence by agreement of parties, charges, first, that the receiver, under the order of appointment, took absolute control and management of all that portion of the pike known as the west end, and that the defendant company had no power or control over the management, supervision, or operation of said pike that went into the hands of the receiver, and would not be liable for the wrongful and negligent acts. of the receiver in not keeping the pike in good repair; and if the pike became defective or out of repair while in the hands of the receiver, and the injury resulted by reason of said defect while in the hands of the receiver, defendant company would not be liable, etc.

Says Mr. Beach in his work on Receivers, Sec. 721: "It is well established that a railway corporation which is in the hands of a receiver who is operating the road as a common carrier under statutory provisions or by virtue of an order of Court, is not accountable for injuries occasioned by the negligence of the employes of the receiver. If a corporation be sued for such injuries it has a perfect defense in the plea that at the time the injuries complained of were inflicted, it was in the hands of a receiver duly appointed and operating the road. This rule is well founded upon principle, since the

corporation, after the appointment, has no control over the employes of the receiver; and also for the further reason, that, as we have just stated, the receiver is responsible for such injuries in his official capacity, and judgment may be had against the estate in his hands." *Hicks* v. *International & G. N. R. R. Co.*, 62 Texas, 38; *Rogers* v. *Mobile & Ohio 'R. R.*, 12 Am. & Eng. R. R. Cases, 432 (Tenn., 1883); 53 Ind., 57; 58 N. Y., 61; *Turner* v. *Hannibal R. R.*, 74 Mo., 602; High on Receivers, Sec. 396, and cases cited; 5 Am. St. Rep., 313, and note.

Says Mr. Wood, viz.: "Upon the appointment of a receiver, the functions, powers, and liabilities of a corporation are suspended, and from that time it ceases to be liable for any contract made or acts done in the operation of the road by the receiver, unless the statute otherwise provides, or the possession of the receiver and the corporation or its lessees is joint." Wood's Railway Law, Vol. III., Sec. 478.

It is insisted, however, on behalf of plaintiff that the charge given by the Circuit Judge was erroneous, for the reason the proof shows that defendant company and the receiver were jointly operating this road, and that each was responsible for the negligence of the other. Counsel cite *Railroad* v. *Brown*, 17 Wall., 445, in which it appeared that a railroad corporation was run on joint account of a receiver of a part of it and the remaining part by lessees. It was held that an action would properly lie against the corporation itself for injuries sustained by a

passenger at the hands of servants employed by the parties jointly operating the road, because the rule that the corporation is not liable in damages when the receiver is so liable is never to be applied unless the possession of the receiver is exclusive and the employes of the road are wholly controlled by him, etc. In the case just cited, it appeared that the railroad extended from Washington City to Alexandria, Virginia. That portion of the road located in Virginia had been leased for ten years. Subsequently that part of the road located in the District of Columbia was placed in charge of a receiver by decree of Court. Passenger tickets were sold for the whole line in the name of the Washington & Alexandria Railroad Company, and the two sections of the road were operated on the joint account of the lessees and the receiver, who jointly employed and controlled the employes. In the case now being adjudged, it distinctly appears that the portion of the road in litigation was in the exclusive charge of the receiver appointed by the Chancery Court at Franklin, and there was no joint operation of the road in conjunction with the defendant company. It appears that the several receivers in charge of the road involved in this controversy contracted for repairs and work on the road, and that in making settlements, in accordance with the orders of the Court, the receivers charged themselves with receipts and credited themselves with salaries paid gatekeepers and with amounts expended for work and repairs on the road.

Again, it is insisted that by the terms of the decree appointing the receiver, he was not directed or required to take charge of any part of the road except the tollgate, and that he was not authorized to employ anyone to work upon the turnpike. In this view, it is insisted that the receiver did not take absolute control of the pike, to the complete exclusion of the defendant company; and the duty imposed by its charter to keep its road in good condition remained a charge upon the company at all times during the litigation. We cannot concur in this view of the case.

It is true the decree of the Chancery Court does not, in express terms, order the receiver to keep the road in repair; but, as is well said by counsel for appellee, in his brief, viz.: "The decree expressly places the portion of the road in dispute in the hands of a receiver, and directs him to collect the tolls. This order, *ex vi termini*, carries with it the authority to make repairs, for the receiver could not collect tolls with his road out of repair, and the Chancellor so construed his decree when he afterwards allowed the receiver credit for the repairs." Since the defendant company had no right to manage or improve or repair the section of the road upon which the accident happened, and as there was no joint operation of the road, the charge of the Circuit Judge under review was entirely correct.

The fourth assignment is that the Circuit Judge erred in refusing the following instruction submitted

by counsel for plaintiff in error, to wit: "If you find, from the proof, that the injury complained of by the plaintiff was sustained by him while the defendant's road was in the hands of a receiver, by reason of defects in the bridge or culvert negligently permitted or allowed by the receiver, and the receiver was afterwards discharged and the road returned to the possession and control of the defendant, the net income of the road having been used and applied by the receiver in permanent improvement of defendant's road, or some part thereof so used, and the remainder of such net income was paid over to or received by defendant in money, then, in such case, the complainant would be entitled to recover, in this action, for whatever damages he has sustained, to the extent of the net income so applied by the receiver or received by the defendant." The Court refused this request.

It will be observed that this instruction proceeds upon the idea that even if the injury was caused by the negligent acts of the receiver, the defendant company would still be liable to the extent of the funds received by it from the receiver after the termination of the receivership. As already stated, when the litigation between the turnpike companies was settled by this Court in favor of defendant company, the tolls collected by the receiver, amounting to about $1,200, were turned over to defendant, and it is now insisted that defendant company is liable for the negligent acts of the receiver causing

injury to plaintiff, to the extent of the fund so received. Counsel cite, on this proposition, *Texas & Pacific Railway* v. *Johnson*, 76 Texas, 421, in which the Court says, viz.: "That a claim for damages caused by injuries inflicted through the negligence of a receiver, while he is operating a railway, is entitled to payment out of current receipts, is well settled." Citing *Ryan* v. *Hays*, 62 Texas, 42; *Burton* v. *Barbour*, 104 U. S., 130; *Kain* v. *Smith*, 80 N. Y., 470; *Hale* v. *Frost*, 99 U. S., 389.

The Court continues, viz.: "If such earnings be invested in betterments, which, without sale, are returned to the company, with its other property, at the close of the receivership, then the company must be held to have received the property charged with the satisfaction of any claim which the receiver ought to have paid out of the earnings. *Ryan* v. *Hays*, 62 Texas, 42; *Fosdick* v. *Schall*, 99 U. S., 253; *Barton* v. *Barbour*, 104 U. S., 130; *Hale* v. *Frost*, 99 U. S., 389; *Miltenberger* v. *Railway*, 106 U. S., 287; *Addison* v. *Lewis*, 75 Va., 701; *Railroad* v. *Davis*, 62 Miss., 271."

The facts of that case (*Texas Pac. Ry.* v. *Johnson*, 76 Texas, 421) are as follows: The plaintiff, Johnson, while in the employ of Brown, a receiver of the Texas & Pacific Railway, appointed by the Circuit Court of the United States sitting at New Orleans, was injured by the negligence of such receiver, and instituted suit against the receiver alone, in a District Court in Texas, to recover damages.

Before the cause reached an issue, the receiver was discharged by order of the Court that appointed him in Louisiana, the decree of discharge requiring all persons having claims against the receivership to intervene in that Court and establish same before a fixed day. The plaintiff in that case did not so intervene, but amended his petition, making the Texas & Pacific Railway a party defendant, alleging that it had received in moneys and betterments from the receiver, in settlement, all the net income from the road. The company set up as defense, by demurrer and plea, that the road was in the hands of the receiver, and that settlement with the receiver had been had in the Court at New Orleans, and that all parties having such claims were required to intervene there, and that the plaintiff had failed to do so, and the time for such intervention had expired, and that plaintiff's action was barred. The cause was tried and dismissed as to the receiver, but a personal judgment was rendered against the company, and execution awarded. On appeal, the United States Supreme Court (Chief Justice Fuller) said, viz.:

"The company was held liable upon the distinct ground that the earnings of the road were subject to the payment of claims for damages, and that, as in this instance, such earnings, to an extent far greater than sufficient to pay the plaintiff, had been diverted into betterments, it must respond directly for the claim. This was so by reason of the statute (Texas Laws, 1887, Ch. 131, page 120); and,

irrespective of statute, on equitable principles applicable under the facts.  38 U. S., L. Co-op. Ed., 85; 151 U. S., 92; *Texas & Pacific Ry.* v. *Bailey*, 83 Texas, 19; *Texas & Pacific Ry* v. *Comstock*, 83 Texas, 537; *Mobile & Ohio R. R.* v. *Davis*, 62 Miss., 271.

"Damages for injuries to persons or property during the receivership, caused by the torts of the receiver's agents and employes, are classed as operating expenses, and are accorded the same priority of payment as belongs to other necessary expenses of the receivership. Such claims will be paid out of the net income if that is sufficient, but in the event of a deficiency they will be paid out of the corpus." 20 Am. & Eng. Enc. L., 385. So, also, if during the receivership net income is applied to the permanent improvement of the railroad property, and the receivership is afterwards discharged and the road again turned over to the company, then the company is liable for torts during the receivership to the extent of such net income so applied." Am. & Eng. Enc. L., pp. 389, 390; *Texas & Pacific Ry.* v. *White*, 18 S. W. R., 481; Beach on Receivers, Secs. 718, 722.

It being conceded that the correct rule on this subject is laid down in the authorities cited, we next inquire as to its application. It is an indisputable condition of the right to recover against the company, even upon the theory that it has received a net income from the receiver, that the declaration

should allege that the injuries were sustained by the plaintiff in consequence of the negligence of the receiver, his servants or agents. The gravamen of the action, as outlined in the four counts of the plaintiff's declaration, is that defendant company committed the wrong; but there is no allegation in either count that the receiver was guilty of any negligence. We have already seen that the company was not chargeable with any breach of its duty in failing to keep the turnpike in repair, for the reason that it was in charge of the receiver appointed by the Chancery Court. If liable at all, it must be so upon the ground that the receiver was guilty of negligence whereby the injuries were occasioned to the plaintiff, and that instead of discharging said liability out of the receipts that came into his hands, he paid them over to defendant company upon the termination of his receivership. But the fatal and irremediable infirmity in the pleadings is that no negligence is charged against the receiver, his servants or agents, and there is therefore no theory presented upon which liability could be predicated or a recovery rested against the company. *East Tenn. Coal Co.* v. *Evan Daniel*, MSS., Knoxville, September Term, 1897.

The judgment of the Circuit Court is therefore affirmed.