## Herman et al. v. Frank Martz Coach Co.

*James T. Kitson,* for plaintiffs.

*Leo A. Achterman* and *R. Bialkowski,* for defendant.

SHULL, P. J., December 23, 1941.—These plaintiffs bring their action against the Frank Martz Coach Company, a corporation, seeking to recover damages on a cause of action based upon allegations which are briefly stated as follows:

"On July 11, 1938, there was a collision on the Effort Mountain Road, in Monroe County, between an automobile owned and operated by Walter V. Herman and a passenger bus of the Frank Martz Coach Company, which was the result of the negligence of Edward Van Arsdale, the driver of the passenger bus.

"With Walter V. Herman in his automobile, at the time, were his wife, Mary Herman, and his son, Richard P. Herman. They all suffered injuries as a result of this collision.

"At the time of the collision, Edward VanArsdale, the driver of the bus, was the employe of Martin Memolo, trustee of the Frank Martz Coach Company, appointed by the United States District Court for the Middle District of Pennsylvania, in proceedings for reorganization of the Frank Martz Coach Company, under section 77$B$ of the United States Bankruptcy Act.

"On May 25, 1938, the Frank Martz Coach Company filed its petition for reorganization under section 77*B* of the National Bankruptcy Act, in the United States District Court for the Middle District of Pennsylvania.

"On June 27, 1938, the United States District Court appointed Martin Memolo trustee of the Frank Martz Coach Company, authorizing him to operate the business of the company and to exercise all the powers of a trustee and also the same powers as those exercised by a receiver in equity.

"The trustee, Martin Memolo, took over the property of the Frank Martz Coach Company and operated its business, which he was doing at the time the collision occurred on July 11, 1938. He continued to operate the business of the company, as trustee, until September 15, 1938.

"On that date, viz, September 15, 1938, the United States District Court approved a plan of reorganization for the company, and pursuant to order of the court the trustee turned over to the company all its assets and property, subject to the control of the court, until the plan of reorganization was carried out.

"On November 23, 1938, Martin Memolo was discharged as trustee by the United States District Court.

"The company completed the plan of reorganization some time prior to March 30, 1939. In carrying out its plan of reorganization, the company paid wages in the amount of $5,307.04, which had accrued to employes of the Frank Martz Coach Company before the filing of its petition for reorganization.

"On March 30, 1939, the United States District Court discharged the trustee and restored the Frank Martz Coach Company to the possession of all its assets and property absolutely.

"During the trusteeship, the trustee managed and operated the business of the Frank Martz Coach Company, collected moneys due it, and from the receipts paid the expenses of operating the business, paid for

improvements and betterments to the company's property and purchased new equipment for the company, all of which property and equipment, at the termination of the trusteeship, was turned back to the company.

"The value of the assets and property turned over to the company by the trustee greatly exceeded the amount of the claims of the plaintiffs.

"The amount expended for improvements and betterments to the property of defendant company, and for the purchase of new equipment and property for the company by the trustee, which equipment and property was turned over to the company, exceeded the amount of the claims of the plaintiffs.

"Likewise, the net earnings of the company during the trusteeship exceeded the amount of the claims of the plaintiffs."

To this statement, defendant filed an affidavit of defense raising questions of law. The question raised by this affidavit is:

Where injury is suffered and damage results from the negligence of an employe of a trustee appointed by the United States court under section 77$B$ of the National Bankruptcy Act of July 1, 1898, 48 Stat. at L. 912, as amended, who is operating the business which was of the corporation, if increment results from operation of the business, which increment together with all of the property in the hands of the trustee is turned over and returned to the corporation either in the form of improvements or betterments to the property or as net earnings in any form, may the injured party, after the discharge of the trustee, maintain an action against and recover from the corporation his damages up to the amount of the increment or net earnings delivered to the corporation?

We find no precedent for an action of this kind in Pennsylvania, nor has counsel on either side cited a Pennsylvania precedent. The statement before us al-

leges that the property of the Frank Martz Coach Company and the operation of its lines were under the exclusive control of the trustee appointed by the United States court at the time of the occurrence upon which these plaintiffs base their action, and that the trustee had been appointed under the provisions of section 77*B* of the National Bankruptcy Act, supra. This action might have been brought against this trustee inasmuch as the alleged trespass took place on July 11, 1938; the plan of reorganization was approved September 15, 1938, at which time all the assets of the company were turned over to the corporation subject to the control of the United States court during the carrying out of the reorganization; and the trustee was finally discharged November 23, 1938. However, during the operation of this property, it is alleged that net earnings increased the assets or reduced existing obligations of the corporation and, at the time the property was returned to the Frank Martz Coach Company, these net earnings had either been applied to the benefit of the Frank Martz Coach Company or were directly turned over to it. One of the incidents of the operation which produced this profit was the occurrence of which this plaintiff complains. This action might have been brought against the trustee and it could have been maintained against him, under which condition any recovery would have been properly chargeable against the operating expenses and would have been paid from the fund arising from the operation if not otherwise. Unquestionably, all that the Martz Coach Company is entitled to receive from the trustee, in addition to the physical property which was actually surrendered to the trustee or a just accounting for such property, is the true increment. This presents to us the question of whether under the law the Frank Martz Coach Company may acquire, add to its assets, and enjoy moneys which morally and equitably belong to another person, which person is justly entitled to compensation from that par-

ticular fund by reason of the fact that the injuries and damages for which compensation is claimed were an incident in the operation or activity which produced the fund, or whether under the law this plaintiff may hold the possessor of that increment liable to the extent of it upon justification of his claim for compensation of his damages. Had a judgment been obtained against this trustee prior to his discharge, beyond question the increment could have been followed, though in the hands of this defendant, by an execution on the judgment.

It is our view that, where the property of a corporation is in the hands of a trustee appointed under section 77B of the United States Bankruptcy Act for the purpose of reorganization of the business, a judgment obtained against the trustee on a cause of action arising from the operation of that property would, should the trustee be discharged without satisfaction of it, remain against and be collectible from the property.

As we have said, we find no precedent for this action in Pennsylvania. There are precedents in other jurisdictions and we also find in 8 Thompson on Corporations (3d ed.) §6362, p. 525, the following statement:

"The discharge of the receiver does not exonerate from liability for injuries to persons or property during the receivership caused by the negligence of the receiver or his subordinates. The corporation is not in general liable for the torts committed by the receiver or his agents or servants in the management of the property while in his exclusive custody under the orders of the court. But this rule is subject to exception in at least three particulars: 1. Where the railroad company, whether the original company or a reorganized corporation, receives the property from the receiver under an agreement by which it assumes all the liabilities incurred by the receiver in operating the road; or where the court in its final decree has reserved its jurisdiction to enforce as liens upon the property of liabilities unsecured by the receiver. 2. Where the earnings of

the road have been invested in betterments upon it and the receiver has been discharged and the property has been returned to the owner with such improvement. 3. In the case of an action to recover a penalty imposed by statute in the exercise of the police power."

And we likewise find it said in 53 C. J. 230, §385:

"Independently of statute, moreover, and under general principles of equity, where property is returned without sale to its owner with betterments and improvements made thereon out of its earnings, receivership expenses will follow the property and may be recovered against it to the extent of such improvements or betterments, and where net earnings of the property are turned back to the owner he is liable to the amount thereof; and in such cases the court, upon discharging a receiver, cannot, by any provisions in its decree, deprive one of his right to resort to such independent remedy by requiring him to intervene and prove his claim in the receivership within a prescribed period."

And in the case of Bartlett, Admr., v. Cicero Light, Heat & Power Co., 177 Ill. 68, 42 L. R. A. 715, the Supreme Court of Illinois said (p. 74) :

"Damages for injuries to persons or property during the receivership, caused by the torts of the receiver's agents and employes, are classed as a part of the operating expenses of the corporation. . . . Such damages, being part of the operating expenses, are accorded the same priority of payment as belongs to other necessary expenses of the receivership, and 'will be paid out of the net income if that is sufficient, but in the event of a deficiency they will be paid out of the *corpus*. . . .

"Where the net income derived from the business during the receivership is diverted from the payment of such operating expenses, and applied to the permanent improvement of the property of the corporation, and the receiver is afterwards discharged, and the property is again turned over to the corporation, in

such case the corporation is liable for torts during the receivership to the extent of the net income so applied. . . .

"The receivers in such cases are not personally liable upon their discharge for claims of this character, but the claims follow the property or fund which alone can be used to satisfy them. . . .

"Where the earnings of the road have thus been invested in betterments upon it, and the receiver has been discharged, and the property has been returned to the owner with such improvements, it necessarily follows that the company must be liable, because the receiver, by virtue of his discharge, ceases to be liable. . . .

"If such were not the law, great and irreparable injustice would be done in many cases. . . . In the case at bar, suit has not been brought against the receiver but has been brought against the company, to which the trust fund or property was restored after the discharge of the receiver. In the absence of all personal liability on the part of the receiver, there is no reason why the trust fund or property should not be liable, as well after the discharge of the receiver, as while he is in office. Where the receiver has returned the property to the company, the fund or property remains the same, and the only difference in the circumstances is, that it is in the possession of the company instead of being in the possession of the receiver. In the case at bar, if the plaintiff has no remedy for the death of his intestate against the company, then he has no remedy at all, inasmuch as the receiver, during whose administration the death occurred, has been discharged from his office, and cannot be held personally liable."

And, again, in the case of The Texas Pacific Ry. Co. v. Johnson, 76 Tex. 421, 13 S. W. 463, the Supreme Court of Texas said (p. 431):

"That a claim for damages caused by injuries inflicted through the negligence of a receiver, while he is

operating a railway, is entitled to payment out of current receipts, is well settled. . . .

"If such earnings be invested in betterments, which, without sale, are returned to the company, with its other property, at the close of receivership, then the company must be held to have received the property charged with the satisfaction of any claim which the receiver ought to have paid out of the earnings."

And, again, in the case of Chicago, Rock Island & Pacific Ry. Co. v. McBride, 136 Ark. 193, 206 S. W. 149, the Supreme Court of Arkansas said (p. 197) :

"It would be inequitable to permit the corporation to receive and hold the earnings of the receiver and not pay the liabilities incurred by him in the management and conduct of the business; so it was proper for appellee to recover under the alleged and admitted facts on equitable principles."

And at page 200:

"The original corporation had no right in equity and good conscience to have more out of the earnings of the receivership than the net earnings after the payment of all just and valid claims."

And in the case of Anderson, Admr., v. Chicago, Rock Island & Pacific Ry. Co., 189 Iowa 739, 175 N. W. 583, the Supreme Court of Iowa said (p. 743) :

"Upon the state of facts here indicated, the United States Supreme Court has spoken fully [citing authorities].

"The substance of the holding in the cited authorities is that, when the property, without sale thereof, is restored to the corporation, with the betterments made by the receiver, the corporation must be deemed to assume the liability of the receiver, to the extent, at least, of the betterments caused by the receiver out of the operation of the property."

The sound equity of these decisions, to our mind, is clear. We can see no reason why, under the allegations in the statement before us, this defendant should hold

free of obligation to these plaintiffs moneys which accrued from the operation of the property when that very operation is alleged by these plaintiffs to have, through negligence, caused them damage. We feel that it should be called upon to answer this action and be held liable to the full extent of this increment should there be a recovery by these plaintiffs at the trial of this cause.

And now, December 23, 1941, the questions of law raised by the affidavit raising questions of law are determined in favor of plaintiffs' contention and against defendant's contention, and defendant is given 15 days from the time of the entry of this decree within which to file an affidavit of defense to the merits.