## Houston & Texas Central Railway Company v. G. Duke Crawford.

### No. 288.

1. **Purchaser Under Receivership.**

A purchaser under an order of court in a receivership can only be held liable according to the terms of such order. See example .................... 279

2. **Receivership of Railway.**

When a railroad is in the hands of a receiver by virtue of orders of a court of competent jurisdiction, the claims arising out of the operation of the road by the receiver, whether under contract or for tort, have the right to payment out of the revenue accruing from the operation of the road superior to the lien of prior mortgage debts. In case such funds are invested in permanent improvements, and the road reverts without sale to the owner, such owner will be liable for such claims to extent of the funds thus invested. This rule obtains after a sale while the property remains under control of the receiver. The purchaser, however, would not be liable for claims arising prior to the sale ............................................... 280

3. **Claims Against Income.**
> The claimant had the right to sue in the State court, and, the receiver having
> been discharged, the State court can enforce its judgment.............. 281

QUESTION CERTIFIED from Court of Civil Appeals for First District, in an appeal from Harris County.

*Baker, Botts, Baker & Lovett,* for appellant.

*F. Chew, Sr.,* for appellee.

*Ewing & Ring,* also for appellee.

BROWN, ASSOCIATE JUSTICE.—The Circuit Court of the United States for the Eastern District of Texas, sitting at Galveston, placed the property of the Houston & Texas Central Railroad Company in the hands of Charles Dillingham, as receiver, who took possession of and operated it under the orders of that court.    On the 4th day of May, 1888, the said court foreclosed mortgages upon said road, and ordered the same to be sold.    On the 8th day of September, 1888, the sale was made, F. P. Olcott being the purchaser.    The sale was confirmed by the court December 4, 1888, and the master was ordered to make deed to the purchaser.    December 24, 1890, upon petition of the purchaser, Olcott, the said court ordered the receiver to deliver the possession of the property to him, "subject to and charged with the obligations and liabilities, contractual or resulting from torts, or otherwise, incurred by the receiver or receivers, as the same should be fixed and determined by said court, and subject to the right, which the court reserved, to charge upon the property, or any part thereof, the payment of any amount that should be found and determined by the court to be due and payable by reason of intervening petitions filed in said cause prior to the decree of foreclosure rendered May 4, 1888, and entitled to priority over the mortgage, and the bills in the case were retained for the purpose of investigating such obligations, liabilities, and petitions, and for such other purposes as might seem needful."

The execution of this order was suspended, by order of the court, during the pendency of an appeal by Cary et al. from an order on an intervention in said cause, until the 4th day of April, 1893, when a final order was made for the delivery of the property to the purchaser; which last order provided, that "all claims and demands of every nature, arising out of the management and operation of the properties purchased by F. P. Olcott at the sale made in the above entitled cause, pursuant to the final decree of this court therein, in respect of which any lien upon the funds derived from said sale, or upon money or property which came to the hands of the receiver or receivers, or upon the property sold to said Olcott, whether against the receiver or receivers or upon the property sold to said Olcott, is claimed, whether against

the said receiver or receivers, or against the mortgagor company, shall be presented and prosecuted by intervention in this court prior to the 1st day of October, 1893; and all such claims and demands as may not be presented on or before the date last mentioned above, by intervention as aforesaid, shall be declared stale, and shall not be a charge upon or enforced against the property herein ordered to be delivered to said Olcott or his assigns, or said funds derived from said sale, or said moneys derived from said sale of property which came to the hands of said receiver or receivers."

On the 10th day of April, 1893, the receiver delivered to the purchaser the property, who conveyed and delivered the same to the defendant, a corporation organized under the laws of Texas.

March 22, 1892, Crawford filed suit in the District Court of Harris County against Charles Dillingham, as receiver, to recover damages for injuries alleged to have been received while in his employ as receiver of the Houston and Texas Central Railroad, the injuries being inflicted on the 17th day of May, 1892, after the sale to Olcott and its confirmation, but before delivery of the property. After the delivery of the property to the Houston & Texas Central Railroad Company, Crawford made it a party to the suit, alleging that it had purchased the road charged with his claim, and that the revenues and earnings of the railroad while in the hands of the receiver were applied to the making of permanent improvements upon the railroad. It is not stated whether the receipts of the road thus invested were derived from its operation after the sale or before.

The statement accompanying the question contains this language: "Surplus earnings and increase of the road during the receivership, after paying operating expenses, were appropriated to the improvement of the road, and exceeded the amount claimed by the plaintiff, and all other claims which accrued during the receivership." We presume that this refers to receipts before as well as after the sale.

Question: "Did the appellant (the railroad company) receive said railroad from the receiver, freed from the claim of the appellee?"

Three questions arise out of the foregoing statement, necessary to be considered in answering the question submitted:

1. Is the purchaser liable in this case under the orders of the United States Circuit Court?

2. Is the purchaser liable to the plaintiff under the facts, independent of the orders of the Circuit Court?

3. If the purchaser is liable to plaintiff, is the claim barred by a failure to present the claim to the United States Circuit Court?

As a general rule, the purchaser of a railroad at a sale made under an order of a court holding the custody of the property, by a receiver, takes the property free from claims against the receiver arising out of the operation of the road; but the court ordering the sale may impose upon the purchaser liability for such debts, as a part of the consideration of his purchase. Hicks v. Railway, 62 Texas, 41; Beach on Re-

ceivers, sec. 735. A purchaser under such order can only be held liable according to its terms. In this case, the order directing that possession be delivered to the purchaser prescribed that he should take the property subject to the payment of such claims against the receiver as might be established before that court within a given time. This was a condition of liability, and the purchaser can not be held by virtue of the order *alone*, except for the claims so ascertained and allowed. Olcott v. Hendrick, 141 U. S., 543. It follows, that the purchaser can not be held in this case under the orders of the court, the plaintiff not having presented his claim in accordance with the orders imposing the liability.

The second question presents greater difficulty. We have carefully examined the authorities, and find no case like this, nor in any text book a discussion of the question. We must therefore determine it upon general principles applied by courts of equity in analogous cases.

From the statement, it appears that the sale was made and confirmed in 1888, and in the order of confirmation the master is directed to make deed of conveyance to the purchaser. In the subsequent orders, there is no mention made of the matter of making a deed, from which we conclude, that the deed was made at the time of confirmation, in pursuance of that order, and also that the purchase money was paid, perhaps arranged as a credit on the mortgages, which was legitimate. Ryan v. Hays, 62 Texas, 50. The sale, confirmation, payment, and deed clearly placed the title in the purchaser, and the court thereafter, in continuing the property in the hands of the receiver, held it as the property of the purchaser. The old company and the mortgagees, under whose mortgage the foreclosure was had, no longer had any right in the property; their rights were in the proceeds of sale.

When a railroad is in the hands of a receiver by virtue of orders of a court of competent jurisdiction, the claims arising out of the operation of the road by the receiver, whether under contract or for tort, have right to payment out of the revenue accruing from the operation of the road, superior to the lien of prior mortgages or other debts; and in case the funds arising from that source be by the receiver invested in permanent and valuable improvements upon the property, and the railroad be, without sale, returned to the owner, such owner will be liable for all such claims against the receiver to the extent of the funds so invested. Ryan v. Hays, 62 Texas, 42; Railway v. Johnson, 76 Texas, 421.

The plaintiff was entitled to have the earnings of the road, while operated by the receiver after the sale and conveyance to the defendant, applied to the satisfaction of his claim; and this fund was diverted from its proper application, the payment of this claim, and invested in betterments upon the property of the defendant.

The improvements made by the receiver after the sale to Olcott and the confirmation of that sale, added to the value of the property over and above what it was at the date of the purchase; all improvements

made before the sale were included in and paid for in the price bid by Olcott, but subsequent improvements were not so included, and not so paid for by him. These improvements, being made with earnings of the road under the management of the receiver, were the result of a diversion of that fund from the payment of claims against that receiver, which claims had a prior equitable lien upon that fund, and the railroad company, the defendant, having received the benefit of that fund, is liable to the plaintiff to the extent of its investment in such betterments after Olcott's purchase, the same as if it had been the original owner of the property which had been turned back under the order of the court without a sale.

The plaintiff had the right to sue the receiver in the State court under the Act of Congress, without the consent of the Circuit Court which appointed him, which jurisdiction could not be directly or indirectly taken from the State court by the United States Circuit Court. If the court that appointed the receiver had retained jurisdiction of the property and continued its receiver until the termination of the suit in the State court, the judgment of the latter must have been enforced by the former; but having discharged its receiver and turned over the property to the purchaser, its jurisdiction ceased, and the State court had the power to proceed to adjudicate the rights of the parties and enforce its own judgment according to the laws of the State. Railway v. Johnson, 76 Texas, 421; same case, 151 U. S., 81. The plaintiff's claim was not affected by a failure to present it to the court which appointed the receiver.

We answer the question submitted, that, under the facts stated, the defendant is liable to the plaintiff to the extent that improvements were made with funds derived from the operation of the road after the title was vested in Olcott, who purchased at the sale.

Delivered May 27, 1895.