# TEXAS AND PACIFIC RAILWAY COMPANY *v.* BLOOM'S Administrator.

## ERROR TO THE CIRCUIT COURT OF APPEALS FOR THE FIFTH CIRCUIT.

No. 88. Argued and submitted October 29, 1896. — Decided January 4, 1897.

A passenger on the road of the Texas and Pacific Railway Company sued that company and its receiver, in a Texas court, in an action at law, to recover for injuries received when travelling on its road while it was in the hands of the receiver. The case was removed to the Circuit Court of the United States, where a trial was had. The receivership had been terminated before the commencement of the action, and the property had, by order of court, been transferred to the company under the circumstances and on the conditions described in *Texas & Pacific Railway* v. *Johnson,* 151 U. S. 81, and in this case. The company contended that it was not liable, or, if liable, that the claim could only be enforced in equity. The trial resulted in a verdict and judgment for the plaintiff. *Held,* that, under the circumstances, the company was liable to the plaintiff in an action at law for the damages found by the jury; that the conduct of the railway company in procuring, or, at least, in acquiescing in the withdrawal of the receivership and the discharge of the receiver, and the cancellation of his bond, and in accepting the restoration of its road, largely increased in value by the betterments, affords ground to charge an assumption of such valid claims against the receiver as were not satisfied by him, or by the court which discharged him.

IN January, 1889, one Bloom, describing herself as a resident of Lamar County, Texas, brought an action in the District Court of that county against the Texas and Pacific Railroad Company and John C. Brown, receiver of said company, claiming damages for personal injuries received while travelling as a passenger on said railroad. The railroad company and Brown, the receiver, respectively filed petitions for the removal of the suit into the Circuit Court of the United States for the Eastern District of Texas. The District Court refused to grant the removal, to which ruling the defendants duly excepted. Pending the making up of the issue, John C. Brown, the receiver, died. The trial resulted in a verdict and judgment in favor of the plaintiff for the sum of six thousand dollars. The cause was then

taken to the Supreme. Court of Texas, where, for error of the District Court in refusing the petition for removal, the judgment was reversed and the cause was remanded.

In June, 1893, the case came on for trial in the Circuit Court of the United States, and the plaintiff recovered a verdict and judgment for the sum of eight thousand dollars, and, on a writ of error, that judgment was, on January 30, 1894, affirmed by the United States Circuit Court of Appeals for the Fifth Circuit. 23 U. S. App. 143. The case was then brought on error to this court. The plaintiff Bloom having died, Charles Manton entered an appearance as her administrator.

*Mr. David D. Duncan* for plaintiff in error. *Mr. John F. Dillon* and *Mr. Winslow F. Pierce* were on his brief.

*Mr. James G. Dudley, Mr. A. H. Garland,* and *Mr. R. C. Garland* for defendant in error submitted on their brief.

MR. JUSTICE SHIRAS, after stating the case, delivered the opinion of the court.

The plaintiff's original petition in the District Court of Lamar County disclosed that the injuries complained of were received in August, 1888, while the railroad was in the hands of John C. Brown, receiver, and alleged that the property of the. Texas and Pacific Railway Company was placed in the hands of said John C. Brown as receiver, at the instance of the said railroad company and for its own benefit, and for the purpose of avoiding its traffic liability in the carrying of passengers and freight. The petition further alleged that the property of the. said railroad company was never sold by said receiver to pay its debts, and was never contemplated to be sold, and that the entire earnings and current receipts of the said railroad while in the hands of the receiver, amounting to more than two millions of dollars, were applied to the payment of mortgage debts and in the betterment of the property of the company. It also alleged

that by an order made on January 2, 1889, by the United States Circuit Court for the Eastern District of Louisiana, John C. Brown was directed to make delivery unto the said Texas and Pacific Railway Company of all property, funds and assets in his hands as such receiver, and that he be directed to account to said company according to his account filed and approved up to June 1, 1888, and for all receipts and expenditures by him received and made since the said June 1, 1888, —such delivery to be made as of October 31, 1888; and it was further ordered that said receiver be discharged on said October 31, 1888, from his receivership, on payment of all costs legally taxed, and thereupon his bond vacated and cancelled. The said order, a copy of which was attached as an exhibit to plaintiff's petition, contained the following further provisions:

"It is further ordered that said property, nevertheless, shall be delivered to and received by said Texas and Pacific Railway Company, subjected to and charged with all traffic liabilities due to connecting lines and all contracts for which said receiver is or might be held under or in any way liable, and subject also to any and all judgments which have heretofore been rendered in favor of intervenors in this case, and which have not been paid, as well as to such judgments as may be hereafter rendered by the court in favor of intervenors, while it retains the cases for their determination, or intervenors now pending and undetermined, or which may be filed prior to February, 1889, together with needful expenses of defending said claims, and upon the condition that such liabilities and obligations of the receiver, when so recognized and adjudged, may be enforced against said property in the hands of said company or its assignees to the same extent they could have been enforced if said property had not been surrendered into the possession of said company, and was still in the hands of the court, and with the further condition that the court may, if needful for the protection of the receiver's obligations and liabilities so recognized by this court, assume possession of said property. The bills in these cases will be retained for the purpose of investigating such liabilities and obligations, and

for such other purposes as may seem needful. It is ordered that all claims against the receiver as such, up to said October 31, 1888, be presented and prosecuted by intervention, prior to February 1, 1889, and if not so presented by that date, that the same be barred and shall not be a charge on the property of said company. It is further ordered that the said receiver advertise in a daily newspaper in New Orleans and in Dallas the fact of his said discharge and a notice to said claimants to make claim within the time aforesaid, to wit, before February 1, 1889, and that he post a printed notice of similar purport in the station houses of said railway."

The first contention on behalf of the plaintiff in error is that, as whatever claim plaintiff acquired by reason of her injury was one not against the defendant company but against the receiver operating the road at the time under the orders of the court appointing him, and as it was within the power of such court, on terminating the receivership, to make and provide for settlement of all claims of parties against such receiver growing out of his operation of the road, and as, in the present instance, by its order, the Circuit Court had made such provision by directing that all claims against the receiver should be presented and prosecuted by intervention prior to February 1, 1889, and, that if not so presented by that date, that the same be barred and shall not be a charge on the property of said company, and that as the plaintiff did not so present or prosecute her claim, she was thereby precluded from maintaining an action against the company.

Undoubtedly, if this were a controversy between a party whose claim originated while a railroad was in the control of a receiver appointed during a foreclosure suit and a purchaser at a judicial sale decreed under that proceeding, the plaintiff's proposition would be a sound one. If the property sequestrated had gone to sale and a fund had been thus realized for distribution, then, upon notice appropriate to proceedings *in rem*, such a claimant would, in the absence of special and unusual circumstances, have been bound by the disposition so made.

But the present case is one in which no judicial sale was

made and no fund realized for distribution by final decree after notice to and a hearing of those having claims against the fund. It was not the ordinary case of a sale and purchase in which compliance with stipulated conditions forms part of the consideration, and in which the extent of the burdens assumed is defined. Here, the railroad and its appurtenances, whose value was largely enhanced during the pendency of the receivership, were returned to the possession of the railroad company; and while it was proper for the court, in order to protect its receiver, to make an order for those who had claims against him to bring them forward for disposition, it by no means follows that the company took back its property free from all claims that may have originated during the receivership. Such might be the case if the claim originated in some personal delinquency of the receiver, for which he and his bondsmen could be held responsible. But where the claim was incidental to the ordinary management of the railroad, not attributable to personal misconduct of the receiver, and where the court which had appointed the receiver had not been put in possession of a fund by a foreclosure sale, but had, at the request of the company and its mortgage creditors, restored its property to the railroad company, while such a claim was pending, we are unable to concede that an order of the kind that was made in this case precluded the plaintiff from enforcing her claim. There is present no element of estoppel in favor of the railroad company; for the plaintiff's judgment, obtained after a trial in which the company's defence on the merits was fully heard, would have to be paid, and it would be a matter of indifference, so far as the pecuniary result is concerned, whether the claim was satisfied by the action of the court when discharging its receiver, or by remedial proceedings against the company after the foreclosure suit had been abandoned.

We think the order in question, fairly interpreted, meant that the court, when about to release the receiver and his bondsmen by a determination of the foreclosure proceedings and a discharge of the receiver, gave an opportunity to those who had claims to present them; but that, after February 1,

1889, those who had not intervened would cease to be entitled to resort to the Circuit Court in the equity suit, and would be remitted to such other remedies as might be within their reach.

Such was the view of the nature of this order that was taken by this court in the case of *Texas & Pacific Railway* v. *Johnson*, 151 U. S. 81, which was a case involving the same proceedings which are now under consideration.

It was indisputably shown at the trial, by the testimony of the receiver himself, that the earnings of the railroad while operated by him largely exceeded the expenses, and that a very large sum was applied by him to improvements and new equipments, so that "the road was turned over to the company in far better condition and more valuable by far than when placed in the hands of the receiver."

Such a state of facts certainly discloses an equitable claim against the railroad, on behalf of the plaintiff below.

But the very fact that the claim is an equitable one is made the basis of another contention by the plaintiff in error, and which is thus expressed in the second assignment of error:

"The Circuit Court of Appeals erred in its judgment affirming the judgment of the Circuit Court in overruling the general demurrer presented by plaintiff in error to the petition of the defendant in error, for the reason that the matters alleged in said petition, if true as stated, disclose no cause of action at common law against plaintiff in error, nor any personal liability on the part of plaintiff in error to defendant in error such as could support an action at common law in said court; but, if any cause of action or right in defendant in error was shown by such pleading, it was of an equitable nature — to wit, an equitable lien on the property of plaintiff in error — and defendant in error's remedy was an equitable one against such property and not by a suit at common law for a personal judgment against the plaintiff in error, and because the right asserted by defendant in error, and her remedies therefor could only be adjudicated and pleaded upon the equity side of said court and by an appeal to said court sitting as a court of chancery."

In sustaining this assignment, the counsel for the plaintiff

in error complain of what is called a misapprehension by the Circuit Court of Appeals of the case of *Texas & Pacific Railway* v. *Johnson,* 151 U. S. 81, and they seek to distinguish that from the present case by calling attention to the fact that the former case came here by way of a writ of error to the Supreme Court of the State of Texas, and to the other fact that there was evidence in the *Johnson case* tending to show that the receiver was appointed at the instigation of the railway company and in order to enable it to improve its property by making repairs to its track and additions to its rolling stock by using therefor the earnings of the company during the receivership.

It is true that, in meeting the argument that a personal judgment could not be rendered against the railway company because it was not liable for acts committed by the receiver, this court said, in the *Johnson case,* that such a question was "one of general law, and for the state court to pass upon." Nevertheless, this court, in reviewing the decision of the state court, said :

" In the view of that court a railway company might be held directly liable when a receiver is appointed in an amicable suit at the instigation of the company and for the company's own purposes, and, these purposes being accomplished, the property is returned to its owner, the rights of no third persons as purchasers intervening, upon the ground that the acts of the receiver might well be regarded as the acts of its own servant, rather than those of an officer of the court, which, under such circumstances, he would only be *sub modo*. But as the court did not feel authorized to entertain a conclusion which might carry the implication that this receivership would have been created or continued, although its object had only been to place the property temporarily beyond the reach of creditors until it could be augmented in value by improvements made from earnings under the protection of the court, that rule was not applied in this case. The company was held liable upon the distinct ground that the earnings of the road were subject to the payment of claims for damages, and that as, in this instance, such earnings, to an extent far greater than sufficient to pay

the plaintiff, had been diverted into betterments, of which the company had the benefit, it must respond directly for the claim.    This was so by reason of the statute (Laws Tex. 1887, 120, c. 131, § 6), and, irrespective of statute, on equitable principles applicable under the facts."

But although this court, in the *Johnson case*, chose to rest its decision upon the well-settled ground that the decisions of the state court in the construction of state statutes are binding on this court, no disapproval was suggested or implied of the reasoning of the state court.    And with a similar question now before us, in a case brought from a Circuit Court of the United States, we see no reason to reach a different conclusion.

It will be observed that in this branch of the case the plaintiff in error is conceding that the plaintiff below had a good cause of action against the receiver; that she was not bound to prosecute her claim as part of the foreclosure proceedings; and that the earnings of the railroad, to an amount largely exceeding the claim, had been diverted by the receiver to betterments.    But the contention is that the plaintiff's remedy, in such circumstances, was by proceedings in equity.    This contention is founded on the proposition that the plaintiff's right to a remedy is solely upon the ground that the income of the road while in the hands of the receiver had been applied to the improvement of the road, and it is argued that such a remedy cannot go beyond the amount of the income so applied, and that the plaintiff must therefore follow the fund in equity, and is not entitled to sue and obtain a personal judgment against the holder of the fund, that is, the railroad company in possession of the railroad increased in value by the betterments.

There is a general principle that a party having a right to resort to a fund in the hands of a receiver or trustee may have the aid of a court of equity in following that fund, where it has been improperly mingled with other funds, or has been invested in property in which third persons have an interest. That is a rule devised for the benefit of the party invoking it, but cannot be applied, as we understand the facts of this case, to the detriment of the defendant in error.    The railroad

company did not, at the trial, pretend that the amount of the benefits received by reason of the betterments did not reach the amount of the plaintiff's claim — indeed, the receiver's testimony showed that the betterments amounted to several hundred thousands of dollars — but the company claimed then, as they do now, that the plaintiff's only remedy was in equity. It is obvious that the only right or advantage that would accrue to the railroad company, if the plaintiff was compelled to resort to an equitable proceeding, would be the opportunity to show that the betterments received were less than the amount of the claim. The conduct of the railroad company in procuring, or, at least, in acquiescing in the withdrawal of the receivership, and in the discharge of the receiver and the cancellation of his bond, and in accepting the restoration of its road, largely increased in value by the betterments, well affords ground to charge an assumption of such valid claims against the receiver as were not satisfied by him or by the court which discharged him. The company might, even in such circumstances, have a right to show that the claims exceeded the amount of the betterments, and have the aid of a court of equity to restrict its liability to that amount. But, as we have seen, it is not pretended that there is any such equity in the present case.

The judgment of the Circuit Court of Appeals is

*Affirmed.*