### HINRICHS v. MISSISSIPPI VALLEY TRUST CO. et al.

(Circuit Court of Appeals, Sixth Circuit. June 8, 1915.)

No. 2617.

CORPORATIONS ⬤⇒579—REORGANIZATION AGREEMENT—CREDITOR ENTITLED TO SHARE IN MORTGAGE LIEN—"INDEBTEDNESS."

An unliquidated claim against a corporation for damages for conversion of coal and timber from claimant's land, upon which a contested suit was pending, was not an "indebtedness" of the company, within the meaning of a reorganization agreement made by its bondholders in order to get it out of the hands of a receiver, by which they consented to the issue of preferred bonds for the purpose of "paying the company's indebtedness" not otherwise provided for; and the claimant, on recovery of judgment when the mortgage securing such bonds was in foreclosure, was not entitled to share in the lien thereof, except as to such portion of her judgment as covered the coal and timber taken by the receiver,

---
⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

which was an indebtedness of the receivership, without the payment of which the bondholders were not entitled to have the receiver discharged.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2307, 2309, 2313–2318; Dec. Dig. ☞579.

For other definitions, see Words and Phrases, First and Second Series, Indebtedness.]

Appeal from the District Court of the United States for the Eastern District of Tennessee; Edward T. Sanford, Judge.

Suit in equity by the Mississippi Valley Trust Company against the Cumberland Coal & Coke Company and others. From a decree denying her right to share in a mortgage lien, Mrs. Amelia M. G. Hinrichs, intervener, appeals. Reversed in part.

J. B. Sizer, of Chattanooga, Tenn., for appellant.
F. M. Thompson, of Chattanooga, Tenn., for appellees.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

KNAPPEN, Circuit Judge. On May 2, 1902, Mrs. Hinrichs sued the Cumberland Coal & Coke Company (hereafter called the Coal Company) and other defendants in the chancery court for Cumberland county, Tenn., to recover lands alleged to have been fraudulently procured from her. The decree of the chancery court canceling her conveyance and ordering restoration of the lands was affirmed at the December, 1905, term of the Supreme Court. The decree of the chancery court awarding Mrs. Hinrichs recovery against the Coal Company for the net value of her interest in coal and timber taken from the lands during the years 1901 to 1905, both inclusive, was affirmed by the Supreme Court in January, 1910, in the amount of $4,198.09. Execution issued meanwhile from the chancery court was returned unsatisfied; the Coal Company being in the hands of a receiver. In 1899, and thus before Mrs. Hinrichs' suit was commenced, the Coal Company gave to the Mississippi Valley Trust Company (hereafter called the Trust Company) a mortgage on its real estate, machinery, and permanent improvements, to secure a bond issue of $1,000,000, all of which bonds were pledged either directly to creditors or to secure the indorsement of the Coal Company's paper.

On September 2, 1902, a few months after Mrs. Hinrichs' suit was begun, a receiver of the Coal Company was appointed under a general creditors' bill filed in the chancery court for Scott county, Tenn. Other litigation connected with the Coal Company's affairs having ensued, a reorganization of its affairs was had, by agreement made February 14, 1903, between the Trust Company, the Coal Company, its stockholders, directors, and certain creditors, together with so-called "voting trustees," members of a certain "syndicate," and other interested parties. This agreement recited the ownership by the Coal Company of assets amounting to $1,667,420, the mortgage of 1899, the pledge of the entire bond issue thereunder, and the existence of a floating indebtedness of about $115,000 "as nearly as can be ascertained," the company's inability to meet its obligations, and the desire

of all parties to "so reorganize the affairs of said Coal Company that it may be taken out of the hands of said receiver, pay its obligations, and provide funds to carry on its business and develop its property." The plan provided for a new bond issue of $1,300,000, of which $300,000 were called "Class A Bonds" and were given priority over the remaining or "Class B Bonds," the class A bonds (together with certain apportionable stock of the Coal Company) to be sold for cash, and the proceeds applied only to "paying the indebtedness of the company not herein otherwise provided for, developing and bettering the company's lands, building coke ovens and other corporate purposes"—as stated elsewhere in the agreement, to pay "the indebtedness of the Coal Company, which is provided to be paid herein, and also other accounts, charges, costs, and fees necessary to be paid, or incident to carrying this plan into effect." The creditors, most of whom were secured by bonds, agreed to accept the payment provided and surrender the collaterals and release their claims. All parties agreed that upon a consummation of the reorganization plan all suits or proceedings against the Coal Company should be dismissed and the receivership terminated. The reorganization plan was duly carried into effect, the new mortgage given to the Trust Company, both classes of bonds issued, the receivership terminated, and its property turned back to the Coal Company. But $253,000 of the class A bonds were issued.

November 24, 1908, foreclosure of the trust mortgage was instituted in the court below, and a receiver of the Coal Company's assets appointed pending foreclosure. Mrs. Hinrichs, having six days later obtained her decree in the chancery court against the Coal Company on account of the coal and timber taken, tendered in the foreclosure suit and asked leave to file a bill alleging her status as a creditor of the Coal Company at the time of the reorganization agreement of February 14, 1903, that by its terms she was one of the beneficiaries, and as such entitled to have her judgment paid out of such of the class A bonds as had already been sold, or, if an insufficient sum remained for the purpose, to have so many of the still unsold bonds of that class disposed of as might be necessary therefor. Leave to file this bill was denied, without prejudice to the presentation of such claim as she might have by intervening petition. Later, May 25, 1910, she filed a pleading, which has been treated as an intervening petition, asking the same relief. On this petition issue was joined. On foreclosure sale under decree of December 23, 1911, the entire property was purchased by a committee of the class A bondholders for $255,000. This sale was confirmed, and the proceeds, after payment of costs, attorney's fees, receiver's compensation, and other expenses, were divided pro rata among the holders of the $253,000 of class A bonds, except $4,000 held in the registry under order of the court to await the determination of Mrs. Hinrichs' intervention. No claim other than that of intervener and those represented by class A bonds has been presented against the Coal Company on account of indebtedness prior to the reorganization agreement, and all such other prior debts have been paid so far as the record shows. Upon final hearing

under the intervention proceedings, Mrs. Hinrichs was denied' relief, and accordingly has brought this appeal.

The only question before us is whether the intervener is entitled to share, ratably with the holders of the $253,000 of class A bonds, in the net proceeds of the foreclosure sale of the mortgaged premises. In considering this question, we may lay out of account the intervener's equities in the Coal Company's assets, based on the theory of their diversion to her prejudice, under the asserted rule that the assets of an insolvent corporation constitute a trust fund in favor of creditors. We say this because at the time her right of action accrued the Coal Company's property was mortgaged for $1,000,000, the new mortgage was for only the same net amount, the issue of class B bonds was required to be reduced to the extent that class A bonds were issued, and in fact but $700,000 of class B bonds were ever issued; and while at the time of the reorganization there was a controversy over the rights of holders of a considerable part of the then existing bond issue, the record furnishes no reasonable basis for supposing that the Coal Company was not indisputably indebted on the original issue of mortgage bonds for more than the $300,000 of class A bonds, the mortgage trustee was in effect, we think, subrogated (at least to that extent) to the rights under the earlier issue, the property sold for but $255,000, and the Coal Company made no transfer of its assets to a new corporation, its corporate existence and ownership of its property being merely continued.

The sole theory of the intervener with which we are concerned thus is that under the reorganization agreement 47 class A bonds unissued and undisposed of were held by the Trust Company for the purpose of paying all then existing indebtedness of the Coal Company not otherwise provided for by the reorganization agreement, and that the intervener is through her interest in such unissued bonds entitled to share with the holders of the bonds issued. The coal and timber for which Mrs. Hinrichs recovered were appropriated as follows: First, that taken previous to the receiver's appointment was appropriated by the Coal Company; second, during the receivership a part of the proceeds of coal and timber taken was paid to the receiver and disbursed and applied by him under the orders of the court as a part of the assets of the Coal Company; third, subsequent to the receiver's discharge the balance of the coal and timber appropriated was received and used by the Coal Company.

We think it entirely clear that the intervener has no claim under the reorganization agreement on account of appropriations of her coal and timber after its property was turned back to the Coal Company. True, one of the purposes of the issue of class A bonds was to provide funds for carrying on the business of the Coal Company and developing its property, and the application of the proceeds included the building of "coke ovens and other corporate purposes." But an intention to provide for the payment of liabilities thereafter incurred cannot properly be found in the language of the agreement.

The appropriations previous to the reorganization involve somewhat different considerations. If intervener's claim is strictly an indebted-

ness, within the true meaning and intention of the reorganization agreement at the time that agreement was made, she would seem entitled to share with the class A bondholders. Her claim was not otherwise provided for, and we are not disposed to attach controlling importance to the fact that she was not a party to the agreement, inasmuch as there was no express provision that only those became parties who participated, and, indeed, all who were paid under the reorganization plan were not required to execute the papers.

Lack of privity is not conclusive against her, for her proceeding was essentially in equity, and whatever might in a given jurisdiction be the rule in suits at law, the rule is one of a general application that the party for whose benefit a promise is made may enforce it in equity. Taenzer v. C., R. I. & P. Ry. Co. (C. C. A. 6) 170 Fed. 240, 247, 95 C. C. A. 436. In our opinion, however, intervener was not, at the time of the reorganization plan, a creditor within the real intention of the agreement, nor did the latter contain any promise for her benefit. Her claim was in its essence one for waste; it was entirely unliquidated and was analogous to an action for tort. She was not at the time recognized as a creditor, and presumably did not so appear upon the Coal Company's books. On the contrary, her entire claim, even for the recovery of the land itself, was being strenuously resisted, and all liability on the part of the Coal Company denied. It would be doing violence to probabilities to assume that either the Coal Company or the other parties to the agreement had intervener in mind as a beneficiary thereunder. Whether the parties other than the Coal Company even knew of her litigation does not appear. It is doubtless true that, had she already obtained judgment for the coal and timber taken, she not only would have been a creditor within the meaning of the agreement, but the other parties thereto would have desired, for their own interest, to provide for payment of her decree and thus relieve the corporation from embarrassment through its enforcement. It is quite another thing to assume that such solicitude embraced the subject of a recovery which might never take place, or, if it did, might come at a time when the Coal Company would be in position to pay it without embarrassment. There is nothing in our decision in Keech v. Stowe-Fuller Co., 205 Fed. 887, 124 C. C. A. 200, opposed to the conclusion we have above stated, for in the latter case Keech was unquestionably a creditor within the intent of the reorganization agreement, and the case involved only the question whether he had lost his rights by delay in accepting the payment provided thereby.

The coal and timber taken during the receivership stand upon a different basis. Liability for those appropriations was clearly a liability of the receivership in as complete an equitable sense as if the suit had been pending or the claim being made against the receiver, and equally so whether the entire proceeds were used by the receiver or whether they were paid in part to the Coal Company. The plain intention of the reorganization agreement was that all such obligations should be discharged, and it must be conclusively presumed that the parties to the agreement did not intend, and that the court would

not have permitted the receiver's discharge with knowledge of the liability in question, actual or potential. Indeed, the receivership could not properly be discharged until all its liabilities were paid or provided for. The fact that intervener's subsequent recovery against the Coal Company includes the receiver's appropriations is not controlling. The Coal Company's liability was not necessarily inconsistent with a liability on the receiver's part. Pennsylvania Railroad Co. v. Jones, 155 U. S. 333, 350, 15 Sup. Ct. 136, 39 L. Ed. 176; Texas & Pacific Ry. Co. v. Bloom, 164 U. S. 636, 639, 17 Sup. Ct. 216, 41 L. Ed. 580. And a judgment against the Coal Company was not necessarily a release of such equitable security as the Coal Company had provided through the reorganization agreement. Payment of the receivership liability should have been provided for by issue and sale of the necessary amount of unissued class A bonds; and equity will consider that as done which ought to have been done.

The decree of the District Court is accordingly reversed in the respect mentioned, with costs, and the cause remanded for further proceedings not inconsistent with this opinion.