**WHEELING VALLEY COAL CORPORATION et al. v. BRADY.**

**No. 5510.**

Circuit Court of Appeals, Fourth Circuit.

Jan. 6, 1947.

Gordon D. Kinder, of Martin's Ferry, Ohio (George A. Blackford, of Wheeling, W. Va., on the brief), for appellants.

Carl G. Bachmann, of Wheeling, W. Va., for appellee.

Hugh Wells, of Cleveland, Ohio (Charles McCamic, of Wheeling, W. Va., on the brief), for objecting creditors as amici curiae.

Before SOPER and DOBIE, Circuit Judges, and CHESNUT, District Judge.

DOBIE, Circuit Judge.

This is an appeal from a judgment of the United States District Court for the Northern District of West Virginia (affirming a decision of the Referee in Bankruptcy) disallowing certain claims of the appellants for alleged obligations of a special bankruptcy receiver appointed by the District Court.

A brief chronology may help to make the whole situation clearer. In August, 1942, appellants leased to Warner Coal Corporation (hereinafter called Warner) certain coal mines formerly operated by appellants. On October 9, 1943, an involuntary petition in bankruptcy was filed against Warner, resulting on February 10, 1944, in an adjudication of bankruptcy. This was affirmed by us on appeal and certiorari was denied by the United States Supreme Court. The mandate was received January 8, 1945, and, on January 11, 1945, an order of reference was entered, referring the matter to T. H. Duval, Referee in Bankruptcy.

On October 22, 1943, the Court (with the consent of all interested parties, including the appellants) appointed A. Spates Brady as receiver to operate the mines and pay

appellants a royalty of 12 cents per ton for all coal mined. Under this appointment Brady operated the mines from October 23, 1943, until January 15, 1945, when the receiver was ordered by the Court to return the mines to the appellants. The Court, however, continued Brady as receiver for the purpose of winding up all matters connected with the receivership, and the Court (not the Referee) continued to hear and decide all receivership matters until the receiver was discharged by the Court on July 25, 1945.

Brady was elected Trustee in Bankruptcy on February 19, 1945. On June 7, 1945, the Court ordered notice sent to all creditors notifying them that if any creditor had any objection to any matter involved in the receivership proceedings, or any motion to make concerning these matters, that they do so on June 27. On June 27, 1945, the Court ordered all creditors who desired to file any further petitions concerning receivership matters to do so on June 28. At the hearing on June 28, appellants' attorney being present, the Court inquired whether there were any additional petitions to be filed or motions to be made concerning receivership matters. No petitions or motions were presented and the Court ordered the case continued until July 25. On July 10, pursuant to the court order of June 28, the Clerk notified all creditors that any matter of any kind whatsoever pertaining to the operation of the receivership, or to the discharge of the Receiver, should be brought to the attention of the Court on July 25, at two o'clock. At the hearing on July 25, though the appellants were present in Court, they filed no claim or petition and made no motion of any kind. The Court thereupon ordered the Receiver discharged and all his books, accounts and remaining assets turned over to the Referee.

On August 15, 1945, three weeks after the discharge of the receiver by the Court, the appellants filed their claims with the Referee. On October 11, 1945, at a meeting of bankrupt's creditors, the Referee considered these claims of the appellants, together with objections to the claims filed by the Trustee in Bankruptcy. The Referee disallowed the claims on the ground that it was improper for him to consider them in the bankruptcy proceedings before him under the order of reference and that the claims should have been presented to the Court which appointed the receiver.

The District Court, having heard the matter on a petition to review the referee's decision, affirmed the referee on May 24, 1946. In a memorandum opinion, the District Court stated: "The Costanzo interests were in daily, if not constant, contact with the operation of this mine by the receiver. In fact, Louis Costanzo was employed by the receiver to manage the mine. They had ample opportunity, while the receiver still had assets in his possession, to have presented this claim to this court as a claim against the receiver, which they failed to do. They cannot now attempt to penalize the bankrupt corporation and its creditors for something which they allege was done by the receiver of this court and over which said corporation had no control whatever. I deem it fruitless to pursue this question further." It will thus be seen that neither the referee nor the Court passed on the merits of the claims asserted by the appellants. Therefore, the question of the merits of these claims is not before us.

The only question, then, before us on this appeal is whether an alleged claim against a bankruptcy receiver appointed by the District Court, ordered to be filed in the District Court by a specified date, and not so filed, no excuse being given, may be lawfully proved after this date by a claimant with full notice and opportunity, before a referee in bankruptcy under a general reference, in the absence of a vacation of the order entered by the District Court or any motion to set aside this order or to extend the time prescribed under the order for the filing of claims against the receiver.

In this connection it might be noted that a great majority of the claims asserted by the appellants were not obligations incurred by the bankrupt. At least one of the claims, No. 4, for damages alleged to have arisen from an explosion in the mine during December, 1942, seems to have arisen prior to the appointment of the receiver. The

other claims, apparently, had no existence prior to the petition in bankruptcy or before the Court appointed the receiver; they are alleged to have arisen out of the operation of the mines by the receiver. No demand was ever made on the receiver, nor was there even an attempt to assert these claims or to give notice of them, prior to the receiver's discharge. This was not altogether a conventional receivership; the parties in interest all asked for the appointment of the receiver and the operation of the mines by him, the war emergency having created an exceptional demand and market for coal.

■■ We think the Court acted within its jurisdiction in fixing a reasonable time within which claims against the receiver were to be filed. In re Lathrop, Haskins & Co., 2 Cir., 223 F. 912. See, also, In re Zimmermann, 2 Cir., 66 F.2d 397; In re Irving Whitehouse Co., 9 Cir., 293 F. 287. Such orders are necessary for the expeditious winding-up of bankrupt estates. People of State of New York v. Irving Trust Co., 288 U.S. 329, 53 S.Ct. 389, 77 L.Ed. 815; In re Riemer, 2 Cir., 82 F.2d 162; In re T. A. McIntyre & Co., 2 Cir., 176 F. 552. Nor was there any abuse of the Court's discretion in refusing to consider the claims of the appellants which arose out of the operation of the mines by the receiver; for the appellants, with more than ample notice (one of the present counsel for appellants participated in the fixing of the date within which claims arising out of the receivership were to be presented), and without any excuse, took no steps whatever until three weeks after the lapse of the time prescribed in the Court's order for the presentation of claims against the receiver. United States Trust Co. of New York v. Territory of New Mexico, 183 U. S. 535, 22 S.Ct. 172, 46 L.Ed. 315; Leadville Coal Co. v. McCreery, 141 U.S. 475, 12 S.Ct. 28, 35 L.Ed. 824. See, also, 53 Cor.Jur. §§ 393-394; 45 Am.Jur., Receivers, § 247; 28 U.S.C.A. § 125; Halsted v. Forest Hill Co., 4 Cir., 109 F. 820. Had appellants seasonably moved for an extension of this time upon any reasonable ground, we must presume the Court would have harkened to their request. They must, accordingly, bear the consequences of their neglect. See Wayne United Gas Co. v. Owens-Illinois Glass Co., 300 U.S. 131, 57 S.Ct. 382, 81 L.Ed. 557; Sandusky v. National Bank, 90 U.S. 289, 293, 23 L.Ed. 155; North American Co. v. St. Louis & San Francisco Ry. Co., D.C., 288 F. 612, 619; Kimm v. Cox, 8 Cir., 130 F. 2d 721, 737; In re Swan, 2 Cir., 82 F.2d 160, 161.

In Glenn on Liquidation, an authoritative book, are three quotations which, though stated in general terms, seem to be of importance:

§ 455, p. 636. "Two things are necessary for any liquidation that is to be both expeditious and fair, first that a time limit be fixed for the presentation of claims, and second that the creditors have notice by such method as reasonably suggests itself * * *."

p. 638. "This limitation may be set by order of court or by statute. That an equity court which has a fund in its charge for liquidating purposes, has power to prescribe such a limit and enforce it, has never been questioned; nor could a doubt very well be raised, considering that the practice originated in the ancient chancery jurisdiction over decedent's estates. * * *"

§ 296, p. 429. The Conclusiveness of Liquidation Orders Does Not Go Beyond the Necessities.

"The danger of speaking of any order or decree as 'binding the world' has already been suggested. Judicial acts of the nature discussed in this chapter have a conclusive effect, and necessarily so; but, merely because an order of this sort has been made, it does not follow that its binding effect is greater than needs dictate."

Apparently opposed to the views we have expressed is an extract in 45 Am.Jur. p. 277: "It is immaterial to the liability of a corporation or person after the return to it or him of its or his property by a receiver, for torts of the receiver, insofar as such liability exists, that suit has not been brought against the receiver but is brought in the first instance against the company to which the trust fund or property was restored after the discharge of the receiver. Furthermore, a railroad company

is liable for any claim which should have been paid by the receiver out of the earnings of the railroad, although the claim is not established by intervention within the time fixed by the order of the court." But we do not think that this statement and the authorities cited in support of it negative our views. In nearly all of the cases, some equity existed in favor of the claimant which seemed to the court sufficient to justify consideration of the claim on its merit after the expiration of the time fixed by the court order. Some of the cases criticized the adequacy of the notice given. There is no question of this in our case. In some of the cases, the claimant was an utter stranger to the receivership proceedings and did not know of the limiting order. Many of these claims were tort actions for personal injuries. In the case before us, the claimants were intimately associated with everything that was done, both in the mines and in the court. Again, some of these cases stress the equity that the property in receivership had been greatly improved and returned to its owners with its value enhanced by the operations of the receivers. Some of the cases, too, emphasize the fact that the receivership was primarily for the benefit of the owners of the property rather than for the benefit of creditors and that after the receivership, the property was operated as a going business.

The most important of the cases cited in support of the extract from American Jurisprudence is Texas & Pacific Railway Co. v. Bloom's Administrator, 164 U.S. 636, 17 S.Ct. 216, 41 L.Ed. 580. In that case, there were obvious equities in favor of the claimant, and though claimant did not intervene in the receivership proceedings as required by the bar order, the claimant did, before the expiration of the time fixed by the bar order, institute an action at law on the claim. And the difference between the Bloom case and the instant case is well illustrated by this portion of the opinion of Mr. Justice Shiras in the Bloom case: "The conduct of the railroad company in procuring, or, at least, in acquiescing in the withdrawal of, the receivership, and in the discharge of the receiver and the cancellation of his bond,

and in accepting the restoration of its road, largely increased in value by the betterments, well affords ground to charge an assumption of such valid claims against the receiver as were not satisfied by him or by the court which discharged him." 164 U.S. 636, 644, 17 S.Ct. 216, 219, 41 L.Ed. 580. See, also, Texas & Pac. Ry. Co. v. Johnson, 76 Tex. 421, 13 S.W. 463, 18 Am.St.Rep. 60, affirmed 151 U.S. 81, 14 S.Ct. 250, 38 L.Ed. 81; Bartlett v. Cicero Light, etc. Co., 177 Ill. 68, 52 N.E. 339, 42 L.R.A. 715, 69 Am.St.Rep. 206; Lassiter v. Norfolk Southern Ry. Co., 163 N.C. 19, 79 S.E. 264; Houston, etc. Ry. Co. v. Crawford, 88 Tex. 277, 31 S.W. 176, 28 L.R.A. 761, 53 Am.St.Rep. 752.

We find no merit in the contention of the appellants that their only recourse after the order of general reference, was to go with their claims before the Referee. Stoll v. Gottlieb, 305 U.S. 165, 170, 59 S.Ct. 134, 83 L.Ed. 104; Klein v. Nu-Way Shoe Co., 2 Cir., 136 F.2d 986; Collier on Bankruptcy, (14th Ed.), Vol. 2, page 408. In a number of other matters, the appellants submitted to the jurisdiction of the Court in receivership matters. Nor can we uphold the assertion of the appellants that they may come in unseasonably with their claims because the Court's order, fixing the time limit within which claims against the receiver must be asserted, did not in specific terms state that claims filed after the final date would not be considered. This effect would seem to flow by necessary implication from the terms of the order and the circumstances surrounding its entry by the Court. Those clearly showed the intention of the Court to wind up this receivership expeditiously, and to settle promptly all claims arising therefrom.

We do not base our decision upon the technical point that the claims were filed with the referee rather than with the Court. Nor do we attribute any sacro-sanctity to bar orders fixing a time limit within which claims against a receiver must be filed. And our decision is without prejudice to the assertion, in the proper way, of any claims not arising out of the operation of the mines by the receiver. We simply decide that the bar order here was reasonable and that, on the facts of the instant case,

 
with no equities whatever which favor the claimants, the District Court did not abuse its discretion in refusing to consider the claims (filed after the time fixed by the bar order) that did arise out of the operation of the mines by the receiver.

As to claims arising out of the operation of the mines by the receiver, the judgment of the District Court is affirmed. As to claims not so arising, the judgment of the District Court is reversed.

Affirmed in part, reversed in part.