**WHEELING VALLEY COAL CORPORATION et al. v. MEAD.**

**In re WARNER COAL CORPORATION.**

No. 5774.

United States Court of Appeals
Fourth Circuit.

Jan. 3, 1949.

Gordon D. Kinder, of Martins Ferry, Ohio, and George A. Blackford, of Wheeling, W. Va. (Gordon T. Kinder, of Martins Ferry, Ohio, on the brief), for appellants.

Carl G. Bachmann, of Wheeling, W. Va., for appellee.

Charles McCamic, of Wheeling, W. Va. (Hugh Wells, of Cleveland, Ohio, on the brief), amici curiae.

Before PARKER, Chief Judge, and SOPER and DOBIE, Circuit Judges.

DOBIE, Circuit Judge.

This case has already been before us twice. Warner Coal Corporation v. Costanzo Transportation Co., 4 Cir., 144 F.2d 589, certiorari denied 323 U.S. 791, 65 S.Ct. 432, 89 L.Ed. 631; Wheeling Valley Coal Corporation v. Brady, 4 Cir., 159 F.2d 155. In this last opinion, we gave a brief chronology of the most important events in this complicated bankruptcy case, 159 F.2d at pages 155, 156. Our holding on that same appeal is thus summarized (159 F.2d 155) in the third headnote to the opinion:

"Where district court ordered claims against bankruptcy receiver to be filed in district court by a specified date and claimant with full notice and opportunity did not seasonably move for an extension of time on any reasonable ground and without any excuse took no step whatever until three weeks after lapse of time prescribed in court's order, refusal to consider claims which arose out of operation of property by receiver was not an abuse of discretion, but order refusing to consider claims not arising out of receiver's operation of property would be reversed."

In the same opinion (159 F.2d at page 156) we said:

"In this connection it might be noted that a great majority of the claims asserted by the appellants were not obligations incurred by the bankrupt. At least one of the claims, No. 4, for damages alleged to have arisen from an explosion in the mine during December, 1942, seems to have arisen prior to the appointment of the receiver. The other claims, apparently, had no existence prior to the petition in bankruptcy or before the Court appointed the receiver; they are alleged to have arisen out of the operation of the mines by the receiver. No demand was made on the receiver, nor was there even an attempt to assert these claims or to give notice of them, prior to the receiver's discharge."

And, pursuant to our mandate, the District Court, December 10, 1947, entered an order, reading, in part:

"The Court having now further considered the opinion of the United States Circuit Court of Appeals, Fourth Circuit, * * * and having concluded that all of said claims arose out of the operation of the mines of the bankrupt by A. Spates Brady, Receiver, with the exception of a claim described in the opinion of the United States Circuit Court of Appeals, as Claim No. 4 for damages alleged to have arisen from an explosion in the mine during December, 1942 * * *. It is ordered that the claim described in said opinion as Claim No. 4 be and the same is hereby referred to Thomas H. Duval, one of the Referees in Bankruptcy for this court, in order that said claimant may be afforded an opportunity to prove its claim for damages alleged to have arisen from said explosion as a claim against this bankrupt estate."

Appellants assert that, since they had no notice or opportunity to appear in connection with this order, it is in no way binding upon them.

Appellants made no effort to prove their claim before the Referee in accordance

with said order but on April 12, 1948, filed a petition in the District Court asking leave to file Amended Claim No. 432, for $291,205. The Trustee objected on the grounds that the claim was actually a new and separate claim and covered items entirely foreign to Claim 432, asserting that original Claim No. 432 was against the Receiver and Amended Claim No. 432 was for obligations alleged to have been incurred by the bankrupt prior to the time the Receiver began operation.

The District Court sustained the Trustee's objection, refused to permit the filing of the amended claim by appellants, and stated in a brief memorandum opinion filed April 21, 1948:

"Gentlemen, prior to the argument of this case, I read the petition to amend the claim of the Costanzo interests, and the answer of the Trustee to that petition. I am convinced that the so-called amendment actually introduces a new claim, which is barred by the Statute.

"I, therefore, refuse to permit the filing of the amended claim."

No claim whatever was ever filed within the statutory period against the bankrupt for the items covered in Amended Claim No. 432. Not until April 12, 1948, did appellants enter the petition in the District Court seeking permission to file Amended Claim No. 432. This was more than three years after both the first meeting of the creditors and the restoration of the mines to appellants. It might be noted that, after the death of A. Spates Brady, Charles Mead was, on June 6, 1947, elected Trustee in place of Brady.

The basis for Amended Claim No. 432 seems to be found in a provision in the lease agreement whereby appellants leased two mines to the bankrupt. This provision requires, substantially, that in the event the lease is terminated for any reason before the coal is either mined or paid for, the lessee must surrender the mines to the lessors sufficiently equipped to mine 70,000 tons of coal per month. With the exception of the claim for the explosion, the Original Claim No. 432, however, was for amounts alleged to have become due by reason of the operation of the mines by the Receiver.

We set out the items in Claim No. 432 and Amended Claim No. 432:

Claim No. 432—$138,458.98

1. Minimum royalties due petitioners October 23, 1943 to January 15, 1945 ...... $ 74,380.64

2. Payments to owners of Hughes sublease ......... 14,758.06

3. To Costanzo Coal Mining Company's payments to 220 employees of receiver in the amount of $3,072.48 owing by the receiver, vacation money—period June 27, 1944, to June 27, 1945, based on $7,500 per year, and the above amount owing by the receiver and paid by Costanzo Coal Mining Company and due from the Receiver to the Costanzo Coal Mining Company.... 3,072.48

4. To clean the head, put in wires, timbers, etc. in Wheeling Coal Company.. 25,000.00

5. Damages to (Wheeling Coal Company) tipple, mining cars, river docks, equipment, by the receiver's abandonment ............ 50,000.00

6. Damage to river docks of Wheeling Valley Coal Corporation for neglect and refusal of receiver after demand to repair .......... 5,081.87

7. To Costanzo Coal Mining Company for use and occupation by receiver of its properties—15 months at $500.00 per month........ 7,500.00

8. June 7, 1945, paid by Costanzo Coal Mining Company to receiver for "alleged" receiver's assets, when receiver had no assets to sell .............. 12,500.00

$192,293.05

Total Credits ............ 53,834.07

Balance Due ............ $138,458.98

Amended Claim No. 432—$291,205.00

| | |
|---|---|
| 3450 feet of 20# rails taken out of worked out places by Warner Coal Corp., and not replaced | $ 816.00 |
| 900 feet of 40# rails taken out of worked out sections by Warner Coal Corp., and not replaced | 408.00 |
| 5650 feet of 4/0 trolley wire disappeared, and taken out of worked out places | 810.00 |
| 151 Model K and Model P mine cap lamps disappeared | 3,171.00 |
| 77 Mine cars were left loaded with stone and dirt for over two years and freezing and thawing completely ruined these cars. These cars were left outside in the weather | 15,400.00 |
| 111 Mine cars were left inside of the mine, they were completely ruined as result of explosion and the fact that they were completely neglected | 22,200.00 |
| Rail tipple, river tipple, conveyors, motors, and screens on tipple were badly deteriorated—they were abandoned and not maintained; they also removed some of the corrugated sheets together with 550 ft. of 42″ rubber belt which was in use from the head house to the tipple | 15,000.00 |
| 4 Jeffrey chain conveyors complete were junked together with extra motors, booms, pans, loading heads and tailpieces | 12,000.00 |
| 1 13 Ton Jeffrey Locomotive was completely dismantled to keep their other equipment in operating condition | 6,000.00 |
| 2 35 B. Jeffrey Mining Machines were completely dismantled to keep their other equipment in operating condition | 3,000.00 |
| 1 Goodman Mining Machine completely dismantled to keep their own equipment in operating condition | 1,500.00 |
| 1 6 Ton Jeffrey Locomotive completely dismantled | 1,000.00 |
| 1 10 Ton Jeffrey Locomotive completely dismantled | 5,000.00 |
| 1 6 Ton Jeffrey Locomotive truck hauled away | 1,000.00 |
| 1 10 Ton Jeffrey Locomotive truck hauled away | 1,200.00 |
| 1 13 Ton Jeffrey Locomotive truck hauled away | 1,800.00 |
| 1 Switch Panel taken away from Shawnee Hill substation and returned in need of repairs and it cost $900 to repair | 900.00 |
| Estimated cost of cleaning out, repairing and reconditioning entries and shafts in Costanzo Mine which were injured, consumed and destroyed by bankrupt | 200,000.00 |
| Total Damages | $291,205.00 |

Even a casual inspection of these two claims, the original claim and the amended claim, would seem to justify the conclusion reached by the District Court—that Amended Claim No. 432 is not in any fair sense an *amendment* of Original Claim No. 432 but that Amended Claim No. 432 is in substance a *new claim* never before asserted in the proceedings. We must, therefore, affirm this ruling of the District Court. Any *essential* connection between the two claims is purely coincidental.

The history of this long drawn out case strengthens in every way the conclusion that we have reached. At the hearing before the Referee in Bankruptcy on Original Claim No. 432, counsel for appellants here made it crystal clear that this claim arose out of the operation of the mines by the Receiver and was in no sense a claim

against the bankrupt. And, on page 5 of the brief of appellee in the previous appeal (#5510), we find:

"The claim filed by appellants is not for obligations incurred by Warner Coal Corporation, Bankrupt, but for alleged obligations of the Receiver during the time he operated the mines from October 23, 1943 to January 15, 1945.

"No part of the claim had any existence prior to the petition in bankruptcy or before the appointment of the Receiver."

And, further, the last three lines of paragraph 14 of Original Claim No. 432, read: "The following provisions state the claims of these petitioners *against the Receiver* (now Trustee), setting forth the *liabilities of the Receiver.*" (Italics ours.)

█ The courts have manifested a positive tendency to strictly enforce the limitation provision of the Bankruptcy Act, 11 U.S.C.A. § 93, sub. n, even to the point of holding that the statutory period is mandatory and that the courts have no power either to permit a late filing of claims or to extend the time set out in the statute. See, 3 Collier, Bankruptcy, 14th Ed., 320, 321, 322; Tarbell v. Crex Carpet Co., 8 Cir., 90 F.2d 683; In re Weco Equipment, Inc., D. C., 55 F.Supp. 532, affirmed sub nom. Public Operating Corp. v. Schneider, 2 Cir., 145 F.2d 830; In re 74 Knowles Street Corporation, D. C., 52 F.Supp. 715. Nor have these courts regarded with too kindly an eye alleged amendments filed after the time limit provided for claims. Thus, in 3 Collier, Bankruptcy, 14th Ed., 165, it is said:

"But the principles governing amendments are apt to be put to a more severe test, if the alleged amendment is filed after expiration of the time provided for proving claims. Amendments subsequent to the time allowed for the filing of proofs of claim call for closer scrutiny, in order to make sure that the amendment does not disguise an attempt to file an entirely new claim, in violation of the statutory time limitation."

And, see, In re Ebeling, 7 Cir., 123 F.2d 520; In re G. L. Miller & Co., 2 Cir., 45 F.2d 115, 116. The instant case, we think, falls squarely within the language used by District Judge Tuttle, in re Ealy, D. C., 31 F.2d 314, 317:

"It is plain that to call this new claim an amendment is to confuse substance with form, and to grant the petition of the claimant would be to permit it to do indirectly what the bankruptcy statute clearly and positively prevents it from doing directly, which, of course, is beyond the power of this court."

█ Appellants invoke the equitable powers of the Court and argue that the filing of amended claim 432 should be allowed in so far as it claims damages for breach of the provisions in the contract of lease requiring the mining of a minimum monthly tonnage of coal and the surrender of the property without removal of equipment and in a condition capable of producing 70,000 tons of coal per month. As a basis for this contention, they point to the fact that in the original claim they set forth breach of the contract in these particulars and offered to prove the damages, arising therefrom as claims against the estate, as well as against the operating funds in the hands of the receiver. A sufficient answer to this is that the specific items embraced in the original claim are so radically different from those of the amended claim as to negative any contention that they relate to the same facts as ground of liability.

Another and complete answer is found in a settlement between the lessors and Receiver after the Receiver had completed his work and the lease had been cancelled upon the petition of the lessors and the property was returned to them by order of court. At that time a controversy arose as to the ownership of certain machinery and equipment in the mine which the lessors claimed should revert to them under the terms of the original lease. The controversy was settled by a compromise under which the lessors took over the machinery and equipment, and in consideration thereof, paid to the Receiver $12,500, thereby indicating that the Receiver had fulfilled his obligations in respect to the equipment of the mines.

█ In distributing a bankrupt's assets, a bankruptcy court sits as a court of equity with all the powers of such a court.

While, admittedly, a bankruptcy court has no power to create priorities in addition to those granted by specific statutory provisions, Bankruptcy Act, § 64, 11 U.S.C.A. § 104, Southern Bell Tel. & Tel. Co. v. Caldwell, 8 Cir., 67 F.2d 802, it has been repeatedly held that a bankruptcy court has power to postpone the claims of creditors who have been guilty of conduct which, under the ordinary rules of equity, would make it inequitable for them to share equally with other creditors in the distribution of dividends. Sampsell v. Imperial Paper & Color Corp., 313 U.S. 215, 61 S.Ct. 904, 85 L.Ed. 1293, rehearing denied 313 U.S. 600, 61 S.Ct. 1107, 85 L.Ed. 1552; Bird & Sons Sales Corp. v. Tobin, 8 Cir., 78 F.2d 371, 100 A.L.R. 654; In re Bowman Hardware & Electric Co., 7 Cir., 67 F.2d 792; In re Handy-Andy Community Stores, D.C., 2 F.Supp. 97; 100 A.L.R. 660. The equities here are decidedly against the appellants. Considering appellants' entire course of conduct throughout these proceedings, we are in no way moved to search for an exception to, or in any way to overturn in appellants' favor, what we think to be the applicable law of the case.

The judgment of the District Court is affirmed.

Affirmed.